UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

DAVID MOTES,

    Plaintiff,

vs.

EQUITI US LLC, and

EQUITI CAPITAL UK LIMITED,

    Defendants.

Case No.

Class Action

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, David Motes, individually and behalf of all others similarly situated ("Plaintiff"), sues Defendants, Equiti US LLC ("Equiti US") and Equiti Capital UK Limited ("Equiti UK") (collectively, "Equiti Defendants"), and alleges the following.

### I. Introduction

Plaintiff brings this class action against the Equiti Defendants because they knowingly aided their prime brokerage client – a fraudulent investment fund called Mediatrix – to deceive investors that its trading strategy had resulted in massive gains when, in fact, the opposite was true.  The Equiti Defendants knew Mediatrix was using Equiti software and reports to mislead investors.  The Equiti Defendants also knew Mediatrix suffered enormous losses, yet continued to deposit more investor moneys in its Equiti accounts.  But the Equiti Defendants continued to enable the fraud.  While the Equiti Defendants collected nearly $13 million in fees from Mediatrix's trading activities, the investor-class lost tens of millions of dollars.

1

## II. Parties, Jurisdiction, and Venue

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(3) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

2. Plaintiff, David Motes, is over the age of 18 and resides in Texas.

3. Defendant, Equiti US LLC, is a Florida limited liability company doing business at its offices and headquarters in North Palm Beach, Florida. Equiti US has identified its Managing Member as Divisa UK Limited. Divisa UK Limited is now known as Equiti Capital UK Limited.

4. Defendant, Equiti Capital UK Limited, is an English limited company with its principal place of business in London, England. It is formerly known as Divisa UK Limited, and it is the managing member of Equiti US.

5. The Court has personal jurisdiction over Defendants on the following grounds. Equiti US operates a business, and maintains its headquarters and office, in Palm Beach County, Florida. Equiti UK is the managing member of Equiti US, and controls Equiti US's business operations, including those operations in Florida. Both Defendants committed tortious acts within Florida. And both Defendants are engaged in substantial and not isolated activity within Florida.

6. Venue is proper because Equiti US maintains an office and its headquarters in Palm Beach County, and because Equiti UK is the managing member of Equiti US and controls Equiti US's Palm Beach County operations.

### III. Relevant Non-Parties

7. Mediatrix Capital, Inc. ("Mediatrix Capital") was originally formed on or about January 8, 2015, as an International Business Company in Belize, and was subsequently moved to the jurisdiction of The Bahamas. Mediatrix Capital is the investment adviser to Mediatrix Capital Fund Ltd. Mediatrix Capital has never been registered with the SEC. No registration statement has been filed with the SEC with respect to securities issued by Mediatrix Capital.

8. Mediatrix Capital Fund Ltd. (the "Fund") was formed on or about September 14, 2016, in The Bahamas as an International Business Company. The Fund is registered with the Securities Commission of The Bahamas as a Bahamian Professional Fund. Neither the Fund nor its securities are registered in the U.S.

9. Blue Isle Markets Inc. ("Blue Isle l ") was formed in Saint Vincent and The Grenadines as an International Business Company on or about December 2, 2015, and has its principal place of business in Nassau, The Bahamas. Blue Isle 1 has never been registered with the SEC. No registration statement has been filed with the SEC relating to securities issued by Blue Isle 1.

10. Blue Isle Markets Ltd. ("Blue Isle 2") is a New Zealand Limited Company registered with the New Zealand Companies Office. In approximately April 2019, Blue Isle 2 acquired all of the assets of Blue Isle 1. Blue Isle 2 has never been registered with the SEC. No registration statement has been filed with the

SEC relating to securities issued by Blue Isle 2.[1]

11. Michael Stephen Young ("Young") purportedly is the Co-Founder and Chief Executive Officer of Mediatrix Capital, the manager and a member of the board of directors of the Fund, and the Director of Sales for Blue Isle 1.

12. Michael Shawn Stewart ("Stewart") purportedly is the Founder, Managing Director, and Chief Trader of Mediatrix Capital; the Chief Operations Officer and a member of the board of directors of the Fund; the General Manager-CEO of Blue Isle 1; and Director of Blue Isle 2. Stewart, in connection with Sewall, purportedly developed the algorithms that Mediatrix purportedly used to trade investor funds. In 2001, the United States Commodity Futures Trading Commission ("CFTC") brought an action against Stewart that he settled by paying restitution of $13,500 and a civil monetary penalty of $20,956.41. (*In the Matter of Currency Trading Systems, et al.,* CFTC Dkt. No. 00-06 (Nov. 6, 2001)). Stewart also was ordered to not apply for registration or seek exemption from registration with the CFTC and to not engage in any activity requiring registration.

13. Bryant Edwin Sewall ("Sewall") purportedly is the Executive Vice President of Operations, and Lead Trade Manager, of Mediatrix Capital; and the Chief Technology Officer and a member of the board of directors, of the Fund.

---

[1] Blue Isle 1 and Blue Isle 2 shall be collectively referred to as "Blue Isle." Mediatrix Capital, the Fund, and Blue Isle shall be collectively referred to as "Mediatrix."

## IV. Facts

### A. The Mediatrix Fraud

14. Mediatrix perpetrated a massive investment fraud on its investors. And, as explained in the next section (Section IV.B. below), the Equiti Defendants knowingly aided and enabled Mediatrix's fraud.

15. Beginning in 2016, Mediatrix raised $125 million from investors in unregistered securities offerings.

16. But Mediatrix misappropriated more than $35 million of investors' money from its bank and brokerage accounts to purchase luxury items.

17. As for the investor moneys that Mediatrix did trade, its trading strategy resulted in catastrophic losses.

18. Mediatrix held Equiti UK brokerage accounts in Blue Isle's name ("Equiti Accounts").

19. The Equiti Accounts contained investors' pooled moneys.

20. Mediatrix implemented a single, one-size-fits-all investment strategy for all investors in the Equiti Accounts: a purportedly fully-automated, algorithmic trading program that traded up to 30 currency pairs plus gold.

21. Pursuant to this "strategy," Mediatrix incurred monthly losses in its Equiti Accounts for at least 24 months between March 2016 and April 2019 – with monthly losses ranging from tens of thousands to millions of dollars.

22. In fact, Mediatrix only attained an aggregate profit in its Equiti Accounts in the first month of trading in March 2016 (a $575 profit) and two

months later in May 2016 (an aggregate three-month profit of $353,000).

23. After May 2016, Mediatrix never again attained an aggregate profit in its Equiti Accounts.

24. Through September 2019, Mediatrix's Equiti Accounts incurred trading losses of approximately $30 million.

25. But Mediatrix hid these losses from its investors.

26. As explained below in Section IV.B., Mediatrix hid its massive losses by using software, data, and reports provided by the Equiti Defendants to send misleading monthly statements and other reports to investors – which showed only *closed*, mostly *profitable* positions, and omitted *open* positions with huge *losses*.

27. By hiding the losses in this fashion, Mediatrix induced new investors to invest, and current investors to maintain their investments, with Mediatrix, and thus was able to continue the scheme.

28. For those investors who requested redemptions, Mediatrix used other investors' moneys in Ponzi-like fashion to pay the redemptions.

29. Plaintiffs and the putative class suffered losses of tens of millions of dollars in connection with their investments in Mediatrix's Managed Account Foreign Exchange Fund ("MAFEF") and the Fund, both of which Mediatrix Capital purportedly managed.

## B. The Equiti Defendants Knowingly Aided Mediatrix's Fraud

30. The Equiti Defendants knowingly enabled Mediatrix's fraud by providing Mediatrix with tools they knew Mediatrix was using to deceive investors.

31. To elaborate, the Equiti Defendants charged a monthly fee to Mediatrix to rent space on the Equiti Defendants' server, to use their software, to brand the software with Blue Isle's logo, and for technological support.

32. The Equiti Defendants provided Mediatrix with server space, software, data, and reports so that Mediatrix could maintain a closed profit-and-loss system ("Closed P&L System") on the Equiti Defendants' software.

33. The Equiti Defendants knew that Mediatrix was using the Closed P&L System to provide misleading monthly statements to investors.

34. With a Closed P&L System, the profit-and-loss statement only reflects "closed" trades and does not reflect "open" trades. Thus, the monthly statements generated under a Closed P&L System would only allocate and report *closed* trades to investors, while omitting any *open* trades.

35. By permitting Mediatrix to utilize the Closed P&L System on the Equiti Defendants' software, the Equiti Defendants ensured that the monthly statements allocated and reported only closed positions to investors, and omitted allocating and reporting any open positions to investors.

36. Thus, when Mediatrix kept a losing position open, and closed a profitable position, the Closed P&L System would allocate and report only the closed *profitable* position, and *omit* allocating and reporting the open *losing*

7

position, to investors on the monthly statements and other reports.

37. The Equiti Defendants knew that Mediatrix used the Closed P&L System to provide these misleading statements and other reports to investors.

38. Investors had no way of knowing that an omitted open losing position would wipe out the gains allocated and reported to them on the monthly statements and other reports.

39. The Equiti Defendants thus enabled Mediatrix to control the returns reported to investors through the trading positions that Mediatrix decided to close. By closing only profitable trades, the monthly statements and other reports generated by the Equiti Defendants' software created the appearance of profitable overall trading. Conversely, Mediatrix kept losing trades open so that the monthly statements would not allocate or report the losses to investors.

40. In addition, when Mediatrix had a losing trade, it would typically open an equal and opposite position – *i.e.*, a hedge – that effectively would close the losing position, but would not result in the Equiti Defendants' software allocating or reporting the loss to investors.

41. The Equiti Defendants knew about these fraudulent trading and reporting practices by Mediatrix, yet continued to execute Mediatrix's trades, and continued to permit Mediatrix to use their software, reports, and data to send misleading monthly statements to investors.

42. Due to the omissions of open losing positions on the monthly statements, investors believed they were investing in a profitable trading strategy,

despite the tens of millions of dollars in losses actually incurred.

43. In addition, the Equiti Defendants provided other reports to Mediatrix to help it effectuate its fraud.

44. Based on the omitted information regarding open losing trades, investors made or maintained their investments with Mediatrix, and Mediatrix was able to continue with its fraud.

45. In contrast to investors who saw only the closed, profitable trades reported to them, the Equiti Defendants saw *all* of Mediatrix's trading positions.

46. The Equiti Defendants further knew that Mediatrix had lost tens of millions of dollars of investor moneys due to its trading activities, yet somehow remained in business and continued to deposit more investor moneys.

47. Governing regulations required Equiti UK to maintain effective systems and controls for countering the risk that it might be used to further financial crimes involving fraud, dishonesty, and misuse of financial information, but Equiti UK failed to comply with those regulations with regard to Mediatrix.

48. In sum, the Equiti Defendants knowingly aided and enabled Mediatrix to mislead investors that its trading strategy was profitable and thus continue to perpetuate the scheme. The Equiti Defendants supplied Mediatrix with the tools – including their server, software, data, and reports – to maintain a Closed P&L System and provide misleading statements and reports to investors. And the Equiti Defendants knew Mediatrix was using those tools to hide the massive trading losses from investors and keep the scheme alive.

49. The Equiti Defendants were incentivized to knowingly aid and abet Mediatrix's deceitful conduct. Indeed, Equiti UK collected $12.7 million in revenues from Mediatrix. On information and belief, Equiti US also received fees for the services it provided to Mediatrix, which included providing data, reports, and software support.

## V. Plaintiff-Specific Allegations

50. Mr. Motes invested $3,028,000 with Mediatrix.

51. Mr. Motes received monthly statements showing that his investment with Mediatrix had achieved substantial gains when, in fact, the opposite was true.

52. Mr. Motes ultimately lost more than 95 percent of his investment with Mediatrix.

## VI. Class Action Allegations

53. Pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), Plaintiff brings this class action on behalf of himself and all others similarly situated. The proposed class ("Class") is defined as follows:

> **All persons who invested in Mediatrix's Managed Account Foreign Exchange Fund or Mediatrix Capital Fund Ltd., as well as all surviving beneficiaries of deceased Mediatrix investors.**[2]

54. Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or to add a subclass(es), if necessary, before this Court

---

[2] Excluded from the Class are: Defendants; any entity in which Defendants, individually or collectively, have a controlling interest; any entity that has a controlling interest in Defendants, individually or collectively; Defendants' legal representatives, assignees, and successors; and the Judge to whom this case is assigned and members of the Judge's immediate family.

determines whether certification is appropriate.

55. Plaintiff submits that this action is properly maintainable as a class action, as it satisfies all the prerequisites of Federal Rules of Civil Procedure 23(a). Specifically, Plaintiff submits as follows:

    a. Upon information and belief, there are dozens or hundreds of members of the Class, such that the Class is so numerous that separate joinder of each member is impracticable.

    b. There are questions of law and fact that are common to all members of the Class as follows:

        i. Whether the Equiti Defendants knew that Mediatrix was using their server, software, data, and reports to deceive investors that Mediatrix's trading strategy had resulted in substantial gains when, in fact, the trading strategy had resulted in tens of millions of dollars of losses.

        ii. Whether the Equiti Defendants knew that Mediatrix was using the Closed P&L System to provide misleading monthly statements to investors.

        iii. Whether the Equiti Defendants knew about Mediatrix's fraudulent trading and reporting practices, yet continued to execute the trades for Mediatrix and ensure that the misleading reports would continue to be sent to investors.

        iv. Whether the Equiti Defendants knew Mediatrix was defrauding

        investors, but continued to aid and abet the fraud because of the enormous commissions and fees they were earning from Mediatrix's trading activities.

    v. Whether the Equiti Defendants knew Mediatrix had suffered enormous losses, yet continued to deposit more investor moneys in its Equiti UK account.

    vi. Whether Plaintiffs and the Class have suffered damages proximately caused by the Equiti Defendants' misconduct in enabling, aiding, and abetting Mediatrix's fraud, and, if so, the proper amount of damages.

  c. Plaintiff's claims are typical of the claims of all Class members because all such claims arise from the Equiti Defendants' enabling, aiding, and abetting of Mediatrix's fraud.

  d. As an investor in Mediatrix, Plaintiff will fairly and adequately protect the interests of all Class members, and Plaintiff has retained competent counsel experienced in class-action litigation.

56. Plaintiff submits that this action also satisfies the requirements of Federal Rules of Civil Procedure 23(b)(3). More specifically:

  a. questions of law or fact common to the claims of Plaintiff and the Class predominate over any question of law or fact affecting only individual members of the Class; and Class representation is superior to other available methods for the fair and efficient adjudication of the

controversy because: (i) the alternative of dozens or hundreds of Class members individually controlling the prosecution of separate claims is impracticable; (ii) the damages suffered by individual Class members may be relatively small compared to the Class-wide damages and, therefore, the expense and burden of individual litigation makes it impracticable for Class members to redress the wrong done to them on an individual basis; (iii) it is desirable to concentrate the litigation in the forum where the instant action is instituted; and (iv) there will be no difficulty in managing this action as a class action.

57. All conditions precedent to bringing this action have been satisfied or waived.

## COUNT I

### Aiding and Abetting Fraud
### (Against Equiti US and Equiti UK)

58. Plaintiff realleges and incorporates Paragraphs 1 through 57 as if fully set forth herein.

59. The Equiti Defendants had actual knowledge of Mediatrix's fraud. Specifically, the Equiti Defendants knew that Mediatrix was providing false information to investors that hid the massive trading losses.

60. Over the course of their relationship, the Equiti Defendants rendered substantial assistance to Mediatrix's fraud against investors by committing the following specific acts:

a. Equiti UK created non-segregated pooled accounts for the deposits of MAFEF and the Fund, which facilitated the commingling of funds of MAFEF investors and the Fund and the misuse or commingling of the funds by Mediatrix.

b. The Equiti Defendants charged Mediatrix a monthly fee to rent space on their server; the right to brand their software with Blue Isle's logo; and technological support relating to that software.

c. The Equiti Defendants provided server space, software, data, and reports to enable Mediatrix to operate a Closed P&L System that allocated and reported only closed positions (which were largely profitable), while omitting to allocate and report open positions (which were largely unprofitable), on monthly statements and other reports sent to investors.

d. Equiti UK executed open, hedged positions against open, losing positions to cement Mediatrix's losses without having to close the positions, which would have required disclosure to investors.

e. Equiti UK executed money transfers to Blue Isle for fictitious performance fees even though Mediatrix was losing millions of dollars for which no performance fees would be due.

f. The Equiti Defendants provided reports to Mediatrix that

further enabled Mediatrix to fool investors into believing that Mediatrix's trading activities were profitable.

61. As a result of the Equiti Defendants' misconduct, Plaintiff and the Class suffered damages.

62. The specific misconduct that gives rise to this claim for aiding and abetting common law fraud was intentional, malicious, deliberate, outrageous and reprehensible, and/or so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of the investors, and, therefore, an award of punitive damages is appropriate.

## COUNT II

### Aiding and Abetting Breach of Fiduciary Duty
### (Against Equiti US and Equiti UK)

63. Plaintiff realleges and incorporates Paragraphs 1 through 57 as if fully set forth herein.

64. Mediatrix Capital was an investment adviser to Blue Isle, and owed a fiduciary duty to the Mediatrix investors.

65. Mediatrix Capital breached the fiduciary duties it directly owed to Mediatrix investors by misleading investors to believe that its trading strategy was profitable, when in fact its trading strategy resulted in massive losses.

66. The Equiti Defendants knew about Mediatrix Capital's breaches of fiduciary duties.

67. The Equiti Defendants knowingly and substantially enabled and assisted in Mediatrix Capital's breaches of fiduciary duties. Mediatrix Capital could

not have perpetrated the fraud without the Equiti Defendants' Closed P&L System, software, data, and reports.

68. Because of the breaches of fiduciary duties directly owed to the investors, Plaintiffs and the Class suffered damages.

69. The specific misconduct that gives rise to this claim for aiding and abetting breach of fiduciary duties was intentional, malicious, deliberate, outrageous and reprehensible, and/or so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of the investors, and, therefore, an award of punitive damages is appropriate.

## COUNT III

**Information Negligently Supplied for the Guidance of Others**
**Restatement (Second) of Torts Section 552**
**(Against Equiti US and Equiti UK)**

70. Plaintiff realleges and incorporates Paragraphs 1 through 57 as if fully set forth herein.

71. The Equiti Defendants had a pecuniary interest in providing brokerage services to Mediatrix.

72. In the course of providing those services to Mediatrix, the Equiti Defendants caused false information to be provided for the guidance of Mediatrix investors. Specifically, the Equiti Defendants provided software, data, and reports to Mediatrix, knowing that Mediatrix was using them to operate a Closed P&L System for the purpose of defrauding investors with misleading monthly statement and other reports.

73. The monthly statements and other reports generated under the Closed P&L System contained material omissions – namely, they omitted allocating and reporting the open losing positions to investors, thus creating the false impression that the investors' accounts had achieved substantial overall gains.

74. Plaintiff and the putative class members justifiably relied on the monthly statements and other reports generated under the Closed P&L System to make or keep their investments with Mediatrix, thus incurring damages.

## RELIEF SOUGHT

75. Based on the foregoing, Plaintiff and the putative class seek the following relief against Equiti US and Equiti UK:,

    a. Certification of the proposed Class;

    b. Compensatory damages;

    c. Punitive damages;

    d. Costs; and

    e. Interest at the maximum allowable rate.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

**[PORTION OF THE PAGE INTENTIONALLY LEFT BLANK]**

Dated: April 7, 2020  Respectfully submitted,

By: */s/ Scott L. Silver*

**Silver Law Group**
Scott L. Silver, Esq.
Florida Bar No. 095631
Email: ssilver@silverlaw.com
11780 W. Sample Road
Coral Springs, Florida 33065
Telephone: (954) 755-4799
Facsimile: (954) 755-4684

**Morgan & Morgan, P.A.**
**Business Trial Group**
Jared A. Levy, Esq.
Florida Bar No. 0645486
Email: JLevy@forthepeople.com
Aiman Farooq, Esq.
Florida Bar No. 0106351
Email: AFarooq@forthepeople.com
515 N. Flagler Dr., Suite 2125
West Palm Beach, FL 33401
Telephone: (561) 227-5858
Facsimile: (561) 227-5857

**Sallah Astarita & Cox LLC**
3010 North Military Trail
Suite 210
Boca Raton, FL 33431
James D. Sallah, Esq.
Fla. Bar No. 0092584
Email: jds@sallahlaw.com
Joshua A. Katz, Esq.
Fla. Bar No. 0848301
Email: jak@sallahlaw.com
Tel.: (561) 989-9080
Fax: (561) 989-9020

*Counsel for Plaintiff*