UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
CASE NO.: 9:20-cv-80599-MIDDLEBROOKS/BRANNON

DAVID MOTES,                              )
                                          )
         Plaintiff,                       )
                                          )
v.                                        )
                                          )
EQUITI US LLC and                         )
EQUITI CAPITAL UK LIMITED,                )
                                          )
         Defendants.                      )
                                          )
_____)


**DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL AND SUBJECT
MATTER JURISDICTION AND FAILURE TO STATE A CLAIM UPON WHICH
RELIEF COULD BE GRANTED**

# TABLE OF CONTENTS

Page

**PRELIMINARY STATEMENT** ............................................................................................. 1

**BACKGROUND** ...................................................................................................................... 2

   I.   Summary of Relevant Allegations in the Complaint ......................................................... 2

      A.    The Complaint alleges Plaintiff is a Victim of a Scheme Perpetrated by Non-Parties
............................................................................................................................................. 2

      B.    Allegations regarding Equiti UK and Equiti US ........................................................... 4

**ARGUMENT** ............................................................................................................................ 6

   II.   The Complaint Should Be Dismissed as to Equiti UK for Lack of Personal Jurisdiction .. 6

      A.    Rule 12 (b)(2) Standard ................................................................................................ 6

      B.    The Court Lacks Specific Jurisdiction Over Equiti UK ............................................... 7

     1. The Complaint Does Not Allege Tortious Acts by Equiti UK in Florida ...................... 7

      2.    Equiti UK Being a Managing Member of a Florida LLC Alone is Not Sufficient to
Confer Personal Jurisdiction ................................................................................................. 8

      C.    The Court Lacks General Jurisdiction Over Equiti UK ............................................... 9

      D.    Equiti UK Lacks the Requisite Minimum Contacts with Florida ............................. 11

   III.   The Complaint Should Be Dismissed For Lack of Subject Matter Jurisdiction ............ 12

      A.    Plaintiff Has Not Plead Article III Standing ............................................................. 12

      B.    The Complaint Does Not Properly Allege Diversity Jurisdiction ............................. 13

   IV.   The Complaint Should be Dismissed for Failure to State a Claim ............................... 14

      A.    Relevant Pleading Standard ...................................................................................... 14

      B.    The Court Must Apply English Law, Which does not Recognize the Causes of Action
Alleged .............................................................................................................................. 15

     1.    English Law Applies to These Claims ...................................................................... 15

     2.    The Claims Fail Under English Law ......................................................................... 17

        a.    Aiding and Abetting Common Law Fraud ............................................................. 17

        b.    Knowing Assistance in Breaches of Fiduciary Duties ........................................... 18

        c.    Information Negligently Supplied for the Guidance of Others .............................. 18

      C.    The Claims Also Fail Under Florida Law .................................................................. 19

     1.    Plaintiff Fails to State Claim for Aiding and Abetting Fraud (Count I) or Breach of
Fiduciary Duty (Count II) against both Defendants ......................................................... 19

i

2.    Plaintiff's Allegations as to Knowledge are Conclusory ................................... 19

3.    Plaintiffs' Allegations of Substantial Assistance are Insufficient ............................ 22

4.    Plaintiff's Group Pleading Allegations Are Defective ................................ 24

D.    Count III Fails to State a Claim for Negligence ........................................ 24

E.    Plaintiff's Class Action Claims in Counts I and III Must be Dismissed Because Reliance Cannot be Established Class-Wide ........................................................ 27

**CONCLUSION** ........................................................................................................................ **29**

# TABLE OF AUTHORITIES

Pages

*A Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*, 938 F.3d 1170 (11th Cir. 2019) ....................... 28

*Aaron Data Sys., Inc. v. GLD Int'l*, Inc., No. 17-cv-62111, 2018 WL 1973653, at *8 (S.D. Fla. Mar. 23, 2018)..... 16

*American Overseas Marine v. Patterson*, 632 So. 2d 1124 (Fla. 1st Dist. 1994) .................................................... 6

*Arnold v. McFall*, 839 F. Supp. 2d 1281 (S.D. Fla. 2011) ................................................................................... 25

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................................................... 14

*Bauer v. Dean Morris, L.L.P.*, No. 08-cv-5013, 2011 WL 3924963, at *3–4 (E.D. La. Sept. 7, 2011).................. 28

*Belin v. Health Ins. Innovations, Inc.*, No. 19-61430, 2019 U.S. Dist. LEXIS 183600, *28 (S.D. Fla. Oct. 22, 2019) ............................................................................................................................................................... 22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................................................. 1

*Brough v. Imperial Sterling LTD*, No. 00-cv-647-Orl-19KRS, 2005 U.S. Dist. LEXIS 15439, at *59 n.38 (M.D. Fla. July 29, 2005) ................................................................................................................................................. 2

*Caiazzo v. American Royal Arts Corp.*, 73 So. 3d 245 (Fla. 4th DCA 2011)....................................................... 9

*Caparo Industries v Dickman* [1990] 2 WLR 358, 368 ........................................................................................ 18

*Carmouche v. Tamborlee Mgt., Inc.*, 789 F.3d 1201 (11th Cir. 2015) ................................................................ 10

*Carter v. Estate of Rambo*, 925 So. 2d 353 (Fla. 5th DCA 2006)......................................................................... 8

*CBS Songs Ltd v Amstrad Consumer Electronics plc* [1988] 2 All ER 484, 492 .................................................. 18

*Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087 (11th Cir. 2017) ............................................................ 19

*Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286 (11th Cir. 2000) ................................................................... 8

*Court-Appointed Receiver of Lancer Mgmt. Grp. LLC v. Lauer*, No. 05-60584CIV, 2008 WL 906274, at *4 (S.D. Fla. Mar. 31, 2008)............................................................................................................................................ 15

*Ctr. for Individual Rights v. Chevaldina*, No. 16-cv-20905, 2018 U.S. Dist. LEXIS 28723, at *20 (S.D. Fla. Feb. 21, 2018) .............................................................................................................................................................. 15

*Daimler AG v. Bauman*, 571 U. S. 117 (2014), ................................................................................................... 9

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249 (11th Cir. 2010)................................... 11

*EcoMed, LLC v. Asahi Kasei Med. Co.*, No. 17-61360-CIV, 2018 WL 6620313, at *10 (S.D. Fla. Oct. 31, 2018).... 9

*Esys Latin Am., Inc. v. Intel Corp.*, 2012 WL 12865249, at *5 (S.D. Fla. Aug. 28, 2012) .................................... 14

*Gilbert & Caddy, P.A. v. JP Morgan Chase Bank, N.A.*, No. 15-CV-60653, 2015 WL 12862724, at *2–5 (S.D. Fla. Aug. 20, 2015)................................................................................................................................................. 14

*Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 127 F.3d 1390 (11th Cir. 1997)....................................................... 25

*Graham v. Cypress Capital Grp., Inc.*, No. 10-81269-CIV, 2011 WL 13227744, at *7 (S.D. Fla. July 12, 2011) ... 24

*Hard Candy, LLC v. Hard Candy Fitness, LLC*, 106 F. Supp. 3d 1231 (S.D. Fla. 2015)....................................... 8

*Holguin v. Celebrity Cruises, Inc.*, No. 10-cv-20215, 2010 WL 1837808, at *2 (S.D. Fla. May 4, 2010) ............. 26

*In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d 1305 (S.D. Fla. 2010)............................................. 16

*In re Resistors Antitrust Litig.*, No. 15-cv-03820, 2017 WL 3895706, at *4 (N.D. Cal. Sept. 5, 2017) .................. 10

*In re Suboxone Antitrust Litig.*, No. 16-5073, 2017 WL 4642285, at *11 (E.D. Pa. Oct. 17, 2017) ...................... 10

*Inman v. Am. Paramount Fin.*, No. 10-CV-80393, 2010 WL 11561179, at *6–7 (S.D. Fla. Aug. 18, 2010) ........... 27

*Internet Solutions Corp. v. Marshall*, 557 F.3d 1293 (11th Cir. 2009) ................................................................ 6

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310 (1945) .................... 12

*Jordan v. Travis Wolff, LLP*, No. 15-cv-570, 2015 WL 7076963, at *3 (M.D. Fla. Nov. 13, 2015).......................... 9

*Julian v. Exlites Holdings Int'l, Inc.*, No. 8:16-CV-2774-T-36AEP, 2017 WL 2930916, at *6 (M.D. Fla. July 10, 2017) .............................................................................................................................................................. 9

*Kuwait Oil Tanker Co SAK v Al Bader (No 3)* [2000] EWCA Civ 160, paragraph 132 ........................................ 17

*Lamm v. State St. Bank & Tr. Co.*, 889 F. Supp. 2d 1321 (S.D. Fla. 2012) ......................................................... 20

*Lawrence v. Bank of Am., N.A.*, No. 09-cv-2162, 2010 WL 3467501, at *2–5 (M.D. Fla. Aug. 30, 2010) ........ 19, 24

*Lee-Bolton v. Koppers Inc.*, No. 1:10CV253/MCR/GRJ, 2013 WL 11522040, at *6 (N.D. Fla. Sept. 9, 2013) ......... 7

iii

*Living Color Enterprises, Inc. v. New Era Aquaculture, Ltd.*, No. 14-cv-62216, 2015 WL 1526177, at *7 (S.D. Fla. Apr. 3, 2015) ........................................................................................................................22

*Lonrho plc v Fayed and others* [1992] 1 AC 448 ........................................................................17

*Lonrho v Fayed (No 5)* [1993] 1 WLR 1489 ..............................................................................17

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339 (11th Cir. 2013)....................................12

*Louis Vuitton Malletier, S.A.*, 736 F.3d at 1358 ..........................................................................12

*Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir.1990)...................................................................7

*Manzo v. Rite Aid Corp.*, No. CIV. A. 18451-NC, 2002 WL 31926606, at *6 (Del. Ch. Dec. 19, 2002), *aff'd*, 825 A.2d 239 (Del. 2003)........................................................................................................28

*McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336 (S.D. Fla. 2017) ...................5

*McGaffin v. Centos Argos S.A.*, No. C4616-104, 2016 WL 6134542, at *3 (S.D. Ga. Oct. 10, 2016) ...................29

*McLane v. Auto. Res. Network Holdings, Inc.*, 178 So. 3d 525 (Fla. 4th DCA 2015).........................8

*Michel v. NYP Holdings, Inc.*, 816 F.3d 686 (11th Cir. 2016) .......................................................15

*Moecker v. Bank of Am., N.A.*, No. 813CV01095SCBEAJ, 2013 WL 12159056, at *7 (M.D. Fla. Oct. 21, 2013)...20

*Mukamal v. Bakes*, 383 B.R. 798 (S.D. Fla. 2007) ......................................................................15

*Mukamal v. GE Capital Corp. (In re Palm Beach Fin. Partners, L.P.)*, 517 B.R. 310, 2013 Bankr. LEXIS 5661, *78, 2013 WL 8923424 (Bankr. S.D. Fla. Aug. 23, 2013)...........................................................22

*Muy v. Int'l Bus. Machines Corp.*, No. 19-cv-14, 2019 WL 8161749, at *2–3 (N.D. Fla. Nov. 25, 2019)...............27

*Perlman v. Wells Fargo Bank*, N.A., 559 F. App'x 988 (11th Cir. 2014) ..........................................20

*Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283 (S.D. Fla. 2014)....................................................7

*Platinum Estates, Inc. v. TD Bank, N.A.*, No. 11-60670, 2012 U.S. Dist. LEXIS 30684, at *9, 2012 WL 760791, at *3 (S.D. Fla. March 7, 2012) ...........................................................................................19

*Razi v. Razavi*, No. 12-cv-80, 2012 WL 7801361, at *4–5 (M.D. Fla. Dec. 21, 2012) ...........................15

*Renaissance Health Pub., LLC v. Resveratrol Partners, LLC*, 982 So. 2d 739  (Fla. 4th DCA 2008)........................7

*Roberts v. Victoria's Secret Stores, LLC*, No. 18-CV-61534, 2018 WL 4828448, at *6 (S.D. Fla. Sept. 7, 2018)....26

*Roblor Mktg. Grp., Inc. v. GPS Indus., Inc.*, 645 F. Supp. 2d 1130  (S.D. Fla. 2009)...............................10

*Romanowski v. RNI, LLC*, No. C 06-6575 PJH, 2007 WL 323019, at *3 (N.D. Cal. Jan. 31, 2007) ........................8

*Royal Brunei Airlines Sdn Bh. v Tan* [1995] 2 AC 378, 392 ..............................................................18

*SCIGRIP, Inc. v. Engineered Bonding Sols., LLC*, No. 615CV653ORL22KRS, 2016 WL 11567080, at *3–4 (M.D. Fla. Apr. 1, 2016)......................................................................................................23

*Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623  (11th Cir. 1996) ................................................6

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) .........................................................................13

*Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197 (11th Cir. 2018) ...................21

*Total Network SL v Her Majesty's Revenue and Customs* [2008] UKHL 19, paragraph 44 ...................................17

*Travaglio v. Am. Exp. Co.*, 735 F.3d 1266 (11th Cir. 2013) ...........................................................14

*Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284 (11th Cir. 1998) ................................................14

*Triton II, LLC v. Randazzo*, No. 18-cv-61469, 2018 WL 4932342, at *5 (S.D. Fla. Oct. 10, 2018).......................15

*Triton II, LLC v. Randazzo*, No. 18-CV-61469, 2018 WL 4932342, at *5 (S.D. Fla. Oct. 10, 2018) ....................26

*Wallack v. Worldwide Machinery Sales, Inc.*, 278 F. Supp. 2d 1358 (M.D. Fla. 2003) ............................11

*Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238 (M.D. Fla. 2013) ......................................20

Pursuant to Federal Rules of Civil Procedure 12(b)(1), (2) and (6), Defendants Equiti Capital UK Limited ("Equiti UK") and Equiti US LLC ("Equiti US") move to dismiss the Complaint for lack of personal and subject matter jurisdiction and failure to state a claim upon which relief may be granted.

## PRELIMINARY STATEMENT

Plaintiff, purportedly on behalf of an investor class that lost money in a defunct fraudulent offshore currency and metals trading fund, has chosen not to sue Mediatrix, the company he accuses of defrauding him.  Rather, he sues Defendants, an established London based prime broker and its U.S. affiliate, with whom Plaintiff had no relationship or contact.  In disregard of Rule 9(b) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Complaint repeatedly concludes that the "Defendants" intentionally assisted one of their customers to commit torts against that customer's customers, with whom Defendants had no relationship.

Plaintiff doesn't just fail to comply with Rule 9(b), he ignores it, along with the important reasons it exists.  Nowhere does Plaintiff even try to meet the burden imposed when accusing another party of acting with fraudulent intent.  The Complaint is simply a redundant series of conclusory statements ("Defendants knew") interwoven with descriptions of the ordinary business practices of prime brokers and software providers.  It therefore fails to state a claim.

Additional grounds for dismissal include: (1) the causes of action alleged do not exist under English law, which applies here under Florida choice of law principles, (2) this Court lacks personal jurisdiction over Equiti UK, (3) the Class allegations are insufficient because individual reliance is an element of the causes of action alleged, and (4) subject matter jurisdiction has not been adequately pled.

1

## BACKGROUND

**I.      Summary of Relevant Allegations in the Complaint**

### A. The Complaint alleges Plaintiff is a Victim of a Scheme Perpetrated by Non-Parties

Plaintiff, a Texas resident, alleges that he and the purported class were defrauded in an offshore investment scheme perpetrated by Mediatrix Capital Inc. ("Mediatrix," a Bahamian International Company) and its affiliated companies Mediatrix Capital Fund, Ltd. (the "Fund," a Bahamian International Business Company), Blue Isle Markets, Inc. ("Blue Isle SVG," a Saint Vincent and the Grenadines International Business Company with its principal place of business in Nassau, Bahamas), and Blue Isle Markets Limited ("Blue Isle NZ," a New Zealand Limited Company).  Compl. ¶¶ 7-10.[1]

The Complaint refers to these companies, their owners, and operators as "Relevant Non-Parties" and also collectively as "Mediatrix" or "Mediatrix Capital."  Compl. ¶¶ 7-13.  In this memorandum, Defendants refer to these parties individually when necessary or collectively as "Mediatrix and its Affiliates."

Mediatrix and its Affiliates are defendants in a Colorado federal securities law action brought by the SEC.  *SEC v. Mediatrix Capital Inc., et al.* No. 19-cv-02594-RM-SKC (D. Colo.).  No allegations are made against the Defendants in the SEC action.  Materials from that proceeding are referenced herein because they appear to be a primary source for Plaintiff's allegations (*e.g.,* Compl. ¶¶ 14-29) and are otherwise subject to judicial notice.[2]

---

[1]  According to the SEC, in 2019 Blue Isle NZ acquired the assets of Blue Isle SVG.  Exh. 2 ¶ 41.

[2]  *See generally Brough v. Imperial Sterling LTD*, No. 00-cv-647-Orl-19KRS, 2005 U.S. Dist. LEXIS 15439, at *59 n.38 (M.D. Fla. July 29, 2005) ("It is well established that 'federal courts may take judicial notice of proceedings in other courts of record.'").

2

Plaintiff alleges he and the purported class are victims of the scheme charged by the SEC in the Colorado case.  Plaintiff alleges that he and the purported class were solicited by Mediatrix between 2016 and 2019 for the purpose of investing in the Mediatrix Capital Fund and Mediatrix's Managed Account Foreign Exchange Fund, although Plaintiff does not specify the precise investment(s) he allegedly made.  Compl. ¶¶ 15, 29.  Plaintiff alleges that Mediatrix deposited some of the money it received from him into accounts controlled by Mediatrix in the name of Blue Isle SVG.  Compl. ¶¶ 18-19.  Blue Isle SVG in turn had trading accounts, solely in *its* name, at Equiti UK in London, England and with other brokers.  *Id.*  Mediatrix allegedly controlled Blue Isle SVG and used the funds that Blue Isle SVG held in those accounts to trade in foreign currency and gold.  Compl. ¶14-20.

Plaintiff alleges that (1) $125 million raised from Mediatrix investors was deposited in Blue Isle SVG accounts with various trade brokers, including Equiti UK, (2) $35 million was "misappropriated" by the owners of Mediatrix from its "bank and brokerage accounts" to buy luxury items, and (3) $30 million was lost through Mediatrix's trading in the Blue Isle SVG accounts at Equiti UK.  Compl. ¶¶ 15, 16, 24.  The Complaint does not say how many brokers and banks Blue Isle held accounts with, or which "bank and brokerage" accounts money was taken from by the non-parties.  It also says nothing about the $60 million of the $125 million that was neither allegedly embezzled nor lost through Blue Isle SVG's Equiti UK account.  The sole allegation against Equit UK with respect to investor money is that Mediatrix (an entity that is not alleged to be, and was not, Defendants' client) suffered trading losses over a two year period totaling $30 million in Blue Isle SVG's accounts held at Equiti UK (Compl. ¶ 24), which are alleged to contain investors' "pooled moneys" (Compl. ¶ 19).

Plaintiff also alleges that Mediatrix and its Affiliates issued misleading monthly account statements to Mediatrix's investors (Plaintiff and presumably the purported class) to help hide the trading losses.  Plaintiff alleges that those account statements misled him by reporting only closed out trades—that were in fact profitable—but not open positions that allegedly were unprofitable. Compl. ¶¶ 26-28, 34-36.  The Complaint does not allege that putative class members read the account statements or relied on them to maintain or increase their investments.  The Complaint does not allege that any putative class member drew the same assumptions about the account statements including both closed and open positions in the P&L that plaintiff claims to have drawn. And, as investors would only have received account statements from Blue Isle SVG, if at all, after they initially invested with Mediatrix, the Complaint does not allege that investors were induced to invest in the first instance because of any account statements or their contents.

**B. Allegations regarding Equiti UK and Equiti US**

The Complaint alleges that Equiti UK and Equiti US, lumped together as "Defendants," (1) knew about the alleged fraud and aided and abetted it; (2) aided and abetted an alleged breach of fiduciary duty by Mediatrix; and (3) made material negligent representations.

The Complaint alleges no contact of any kind between Defendants and Plaintiff or any putative class member.  The Complaint alleges Equiti UK is a London-based foreign exchange and metals broker where Mediatrix maintained trading accounts in the name of Blue Isle SVG, where Mediatrix sent pooled investor funds to trade.  Compl. ¶¶ 18-19.[3]  The Complaint further alleges

---

[3] According to the SEC, the brokers used by Blue Isle SVG, including Equiti UK, only have accounts in Blue Isle SVG's name and do not have any subaccounts on their books for the Mediatrix Funds or any individual investors in the Funds.  Specifically, the SEC's Complaint states that individual Mediatrix investors and the Mediatrix Funds "are not customers of the Prime Brokers [including Equiti UK], and the Prime Brokers do not maintain any information regarding the individual investors or the Fund."  Exh. 2 ¶ 66.  Equiti UK only had a customer relationship with Blue Isle SVG.  Neither Equiti UK nor Equiti US had contractual relationships with other

that Equiti UK and Equiti US (improperly lumped together) licensed account reporting software to Blue Isle SVG that Mediatrix used to report Profit and Loss to investors based on only closed out trades, which Plaintiff alleges was misleading.  Compl. ¶¶ 26, 31-32.

The software sublicense agreement was actually between Blue Isle SVG and Equiti US, **not** Equiti UK. *See* Exh. 1 ¶6.  Equiti US sublicensed to customers, including Blue Isle SVG, off-the-shelf trading software called MT4.  *Id.*[4]  Plaintiff alleges that Blue Isle SVG used this software from 2016 to 2019 to design and issue monthly statements based on closed out trades only and therefore misled Plaintiff and purported class members to believe that their investments with Mediatrix were profitable, when unreported open positions would have reflected otherwise.  Compl. ¶¶ 26-27, 31-36.

The Complaint does not allege that Equiti UK or Equiti US made or operated that software, designed or issued the monthly customer account statements, or received copies of the statements.  Although the Complaint *concludes* that Equiti UK and Equiti US "knew" that Mediatrix was providing misleading monthly statements to its clients because they reported only closed trades, it alleges no facts in support of that *conclusion,* or that investors believed the account statements reflected P&L for open positions as well closed out trades.  *See, e.g.*, *id.* ¶¶ 33, 37, and 41.  The Complaint merely claims that *Mediatrix* used the reports that it generated with software sublicensed from Equiti US *and PANDA* to lead the Plaintiff and putative class members into

---

Mediatrix entities, Plaintiff, or any other Mediatrix investors.  This is confirmed by Equiti UK's COO Michael Ayres in his declaration attached hereto as Exhibit 1.  Exh. 1 ¶ 7.  Courts routinely consider declarations in support of Rule 12(b)(2) motions.  *See McCullough v. Royal Caribbean Cruises, Ltd*., 268 F. Supp. 3d 1336, 1345 (S.D. Fla. 2017).

[4] Blue Isle SVG then sublicensed from a separate company (PANDA Trading Systems, not Equiti UK or Equiti US), a third-party plug-in record-keeping system for MT4 (the MT4 MAM), which was (1) widely used and (2) not specifically designed for Blue Isle SVG.  *Id.* ¶ 6.  PANDA Trading Systems, the company that makes MT4 MAM, is based in Israel and Cyprus.  *Id.*

thinking that all of their positions, rather than just the closed out trades, were profitable.  Finally, the Complaint does not allege anything about Defendants aiding (or knowing about) embezzlement or misappropriation by Mediatrix.  Indeed, the Complaint alleges nothing about involvement by Defendants with any activities of Mediatrix in connection with soliciting investments by anyone.

## ARGUMENT

## II.    The Complaint Should Be Dismissed as to Equiti UK for Lack of Personal Jurisdiction

### A.    Rule 12 (b)(2) Standard

Courts in the Eleventh Circuit engage in a two-step inquiry to determine whether the exercise of personal jurisdiction over a non-resident is proper.  *Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009).  A court first determines whether the exercise of personal jurisdiction is appropriate under Fla. Stat. § 48.193, Florida's long-arm statute.  Section 48.193(1) provides that a non-resident is subject to specific personal jurisdiction in Florida by "[o]perating, conducting, engaging in, or carrying on a business or business venture" in Florida, or "having an office or agency in this state"; or by "[c]ausing injury to persons or property" in Florida "arising out of an act or omission of the defendant outside the state." *Id.*  Section 48.193(2) provides for general jurisdiction over a defendant "engaged in substantial and not isolated activity" within Florida.  *American Overseas Marine v. Patterson*, 632 So. 2d 1124, 1127 (Fla. 1st Dist. 1994).

The second step of the inquiry examines "whether sufficient minimum contacts exist between the defendants and the forum state so as to satisfy 'traditional notions of fair play and substantial justice' under the Due Process Clause of the Fourteenth Amendment."  *Sculptchair, Inc. v. Century Arts, Ltd*., 94 F.3d 623, 626 (11th Cir. 1996).  Both parts of the test must be satisfied for a court to exercise personal jurisdiction over a non-resident defendant.  *Renaissance Health*

*Pub., LLC v. Resveratrol Partners, LLC*, 982 So. 2d 739, 741 (Fla. 4th DCA 2008).  If the first prong is unsatisfied, the court need not address the due process prong.[5]

      **B.     The Court Lacks Specific Jurisdiction Over Equiti UK**

Plaintiff alleges that this Court has specific personal jurisdiction over Equiti UK because (1) both Defendants "committed tortious acts within Florida" and (2) Equiti UK is "the managing member of Equiti US, and controls Equiti US's business operations, including those operations in Florida."  Compl. ¶ 5.

      **1. The Complaint Does Not Allege Tortious Acts by Equiti UK in Florida**

Plaintiff alleges intentional fraud by non-parties, but no tortious acts anywhere by Equiti UK relating to that fraud, let alone in Florida.  The only allegations are that Equiti UK was Blue Isle SVG's broker in London.  The Complaint contains no allegations that any false reports used by Mediatrix to defraud Plaintiff were generated by Equiti UK, that they were generated in Florida, or that any trades were executed in Florida.  Plaintiff alleges that he resides in Texas and does not allege that he received false account statements in Florida or that they were sent to him from Florida.  Therefore, the Complaint does not allege as to Equiti UK "a suit arising out of or related to defendant's contacts with the forum" and specific jurisdiction is not established.  *American Overseas Marine v. Patterson*, 632 So. 2d 1124, 1127 (Fla. 1st Dist.); Fla. Stat. § 48.193(1).

---

[5] *See generally Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir.1990) ("Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant."); *Peruyero v. Airbus S.A.S.,* 83 F. Supp. 3d 1283, 1290 (S.D. Fla. 2014) ("[Plaintiff] fails to make a prima facie showing that [defendant] is subject to specific jurisdiction under § 47.16; therefore, I need not address whether exercising personal jurisdiction over [defendant] would offend due process or traditional notions of fair play and substantial justice."); *Lee-Bolton v. Koppers Inc.,* No. 1:10CV253/MCR/GRJ, 2013 WL 11522040, at *6 (N.D. Fla. Sept. 9, 2013) ("[T]he record provides no basis for either general or specific jurisdiction over Koppers Holdings under the long-arm statute.  For this reason, it is unnecessary to discuss the due process prong … .").

### 2. Equiti UK Being a Managing Member of a Florida LLC Alone is Not Sufficient to Confer Personal Jurisdiction

The Complaint asserts that specific jurisdiction over Equiti UK arises because Equiti UK is the managing member of Equiti US, a Florida registered LLC.  Even if the Complaint had alleged a wrongful act by Equiti US (as opposed to the legitimate business activity it alleges), the fact that Equiti UK was Equiti US's "managing member" is insufficient on its own to support specific jurisdiction over Equiti UK.  *Carter v. Estate of Rambo*, 925 So. 2d 353, 354-56 (Fla. 5th DCA 2006) (in the absence of a showing of minimal contacts with Florida and evidence of personally running the business in Florida, managing member of a Florida LLC was not subject to personal jurisdiction where his only contact with the state was signing business reports in representative capacity);  *see also McLane v. Auto. Res. Network Holdings, Inc.*, 178 So. 3d 525, 527 (Fla. 4th DCA 2015) (the allegations did not establish that managing member of the LLC committed a tort in Florida or breached a contractual obligation, and there was no personal jurisdiction over the managing member); *Romanowski v. RNI, LLC*, No. C 06-6575 PJH, 2007 WL 323019, at *3 (N.D. Cal. Jan. 31, 2007) (defendant's "mere status as [LLC]'s managing member is not sufficient to permit jurisdiction to be asserted over him as to those claims").[6]

---

[6] The case law regarding specific jurisdiction over a foreign managing member of a Florida LLC is consistent with the case law as to foreign parents of Florida subsidiaries.  "A fundamental principle of Anglo–American law is that a business operating as a legally recognized entity is separate and distinct from its owners."  *Hard Candy, LLC v. Hard Candy Fitness, LLC*, 106 F. Supp. 3d 1231, 1240–41 (S.D. Fla. 2015).  "'Generally,' therefore, 'a foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there.'"  *Id.*  "Where the subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent, jurisdiction over the parent may not be acquired on the basis of the local activities of the subsidiary."  *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000) (internal citations and quotations omitted).

Plaintiff fails to allege sufficient facts to support jurisdiction over Equiti UK by virtue of its relationship to Equiti US.  The Complaint relies solely on Equiti UK's status as managing member of Equiti US.  It alleges no facts showing that Equiti US "functioned solely to achieve [Equiti UK's] objectives and that [Equiti US] had no separate corporate interests of its own." *EcoMed, LLC v. Asahi Kasei Med. Co*., No. 17-61360-CIV, 2018 WL 6620313, at \*10 (S.D. Fla. Oct. 31, 2018), *report and recommendation adopted*, No. 0:17-CV-61360, 2018 WL 6620467 (S.D. Fla. Nov. 28, 2018).  Plaintiff's assertion that Equiti UK "controls Equiti US's business operations, including those operations in Florida" is a mere conclusion and inadequate as a matter of law.[7]

### C.      The Court Lacks General Jurisdiction Over Equiti UK

The Court lacks general jurisdiction over Equiti UK because the Complaint does not allege any facts that could lead to the conclusion that Equiti UK engaged in "substantial and not isolated activity" in Florida.  Fla. Stat. § 48.193(2)).  Florida courts construe "substantial and not isolated activity" to mean "continuous and systematic business contact" with the state.  *Caiazzo v. American Royal Arts Corp*., 73 So. 3d 245, 250 (Fla. 4th DCA 2011).

The United States Supreme Court explained the standard for general jurisdiction in *Daimler AG v. Bauman*, 571 U. S. 117 (2014), when it revisited the meaning of "continuous and systematic contact."  *See Julian v. Exlites Holdings Int'l, Inc*., No. 8:16-CV-2774-T-36AEP, 2017 WL 2930916, at \*6 (M.D. Fla. July 10, 2017).  "The Supreme Court noted that it is the 'exceptional case' for a defendant to be 'essentially at home' in a place other than its domicile."  *Id*.; *accord*

---

[7]    *Compare* Compl. ¶ 5 with *EcoMed*, 2018 WL 6620313, at \*10 (rejecting similar jurisdictional allegation) *and Jordan v. Travis Wolff, LLP*, No. 15-cv-570, 2015 WL 7076963, at \*3 (M.D. Fla. Nov. 13, 2015) ("court need not accept legal conclusions" asserting grounds for personal jurisdiction).

*Carmouche v. Tamborlee Mgt., Inc*., 789 F.3d 1201, 1204 (11th Cir. 2015).  It is undisputed that Equiti UK is domiciled in England.

Plaintiff's effort to allege general jurisdiction over Equiti UK consists of nothing more than regurgitating the magic words found in the statute and lumping the Defendants together.  Compl. ¶ 5. ("both Defendants are engaged in substantial and not isolated activity within Florida.").  This allegation is conclusory and insufficient as a matter of law.  *See In re Suboxone Antitrust Litig.*, No. 16-5073, 2017 WL 4642285, at *11 (E.D. Pa. Oct. 17, 2017) (dismissing claim where "complaint's allegations lump defendants together by nature of their corporate relationship, but set forth specific facts as to only some defendants"); *In re Resistors Antitrust Litig.*, No. 15-cv-03820, 2017 WL 3895706, at *4 (N.D. Cal. Sept. 5, 2017) ("[I]ndiscriminate and generalized lumping together of defendants does not make for a sound pleading approach.").  Moreover, the Complaint is simply wrong about Equiti UK, which has demonstrated through admissible evidence that:

- It is not licensed to do business in Florida;

- It does not carry out business in Florida (or any other US state);

- It has no address, offices or employees in Florida;

- It does not advertise or market in Florida or directly at Florida residents (or residents of any other US state);

- It does not pay taxes in Florida (or any other US state);

- It is not regulated by any US regulator; and

- It does not maintain an agent for service of process in Florida.

Exh. 1 ¶ 8.  Accordingly, general jurisdiction over Equiti UK does not exist.  *See Roblor Mktg. Grp., Inc. v. GPS Indus., Inc*., 645 F. Supp. 2d 1130, 1144 (S.D. Fla. 2009).

### D.  Equiti UK Lacks the Requisite Minimum Contacts with Florida

Even if Florida's long-arm statute permitted the exercise of specific or general jurisdiction over Equiti UK, "[a] court can exercise personal jurisdiction only if the [defendant] maintains 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Julian*, 2017 WL 2930916, at *6. "To constitute minimum contacts for purposes of personal jurisdiction, the defendant's contacts with the applicable forum must: (1) be related to the plaintiff's cause of action or have given rise to it; (2) involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, thus invoking the benefit and protection of its laws; and (3) be such that the defendant should reasonably anticipate being haled into court there." *Wallack v. Worldwide Machinery Sales, Inc.*, 278 F. Supp. 2d 1358, 1367–68 (M.D. Fla. 2003).  Plaintiff bears the burden of establishing facts satisfying these requirements.  *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010).

The Complaint contains no facts showing any Equiti UK contacts with Florida other than Equiti UK being the managing member of Equiti US.  That is insufficient, however, for the reasons stated in Section II(B) and (C) above.

In addition, Equiti UK had no reason to anticipate being haled into a US court in Florida in connection with any dispute relating to Blue Isle SVG because neither is a US company and the customer agreement between Equiti UK and Blue Isle SVG selects the United Kingdom as the source of controlling law and the venue for any disputes.[8]  Moreover, Equiti UK did not contract with US customers as part of its business model.  Every prospective Equiti UK client makes a

---

[8] *See* Exh. 3 Clause 28 ("This Agreement, and any other obligations connected with this Agreement, are governed by and construed in accordance with English law and you and we submit to the exclusive jurisdiction of the English courts.").

representation, as a precondition of opening an Equiti UK account, that the prospective customer

it is not a US person.  *See* Exh. 1 ¶ 11; Exh. 3 Clause 6.1; Exh. 4 Clause 6.1.[9]  Indeed, Equiti UK

is not regulated by any US regulator and is not alleged to be.  Exh. 5.

Asserting personal jurisdiction over Equiti UK would also offend traditional notions of fair

play and substantial justice.  *See Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp.*

*& Placement*, 326 U.S. 310, 320 (1945).  In this analysis, the Court considers (1) "the burden on

the defendant," (2) "the forum's interest in adjudicating the dispute," (3) "the plaintiff's interest in

obtaining convenient and effective relief," and (4) "the judicial system's interest in resolving the

dispute."  *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1358 (11th Cir. 2013).  None

of these factors support the assertion of jurisdiction over Equiti UK.  As a foreign entity, Equiti

UK faces additional burden and expense in litigating in the United States.  *See generally* Exh. 1.

The state of Florida, and the federal courts herein, have minimal interest in a dispute between a

plaintiff who claims to be a Texas resident and an English financial institution, especially where,

as here, Plaintiff has made no *prima facie* showing that Equiti UK did anything improper and is

accused, albeit in conclusory fashion, of aiding and abetting non-Florida actors.

## III.    The Complaint Should Be Dismissed For Lack of Subject Matter Jurisdiction

### A.    Plaintiff Has Not Plead Article III Standing

Plaintiff must satisfy the "irreducible constitutional minimum" of Article III standing by

clearly alleging facts demonstrating that he has (1) suffered an injury in fact, (2) that is fairly

---

[9] *See* Exh. 3 Clause 6.1 ("When you sign this Agreement, you warrant and represent that you …
are not a US resident or US citizen … ."); Exh. 4 Clause 6.1 ("When you sign this Agreement, you
warrant and represent that you … are not a US resident, US citizen or a company registered in the
US (as applicable) … .") (current terms and conditions effective as of Nov. 2018) (available at
https://www.equiticapital.co.uk/legal-documents/#terms-and-conditions).

traceable to the challenged conduct of Defendants, and (3) that is likely to be redressed by a favorable judicial decision. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

Plaintiff alleges that he was defrauded by Mediatrix and its Affiliates into investing in the first place, yet makes no attempt to connect anything about his initial investment decision to either Defendant, let alone each of them. He makes no allegations that any Blue Isle SVG trading activity (with Equiti UK or any other broker) was involved in his decision to invest. This means Plaintiff has not satisfied the second and third prongs of Article III standing.

Furthermore, Plaintiff *assumes* that funds he invested with Mediatrix were deposited with Equiti UK and "lost" through Blue Isle SVG's trading, but the Complaint does not plead any facts to support that assumption. The only facts about the monies he invested which Plaintiff pleads are that (1) funds he invested were part of the $125 million raised by Mediatrix and (2) Mediatrix and its Affiliates embezzled $35 million of the $125 million without investing it anywhere. Compl. ¶¶ 15, 24. But Plaintiff pleads nothing about whether any of his funds actually were deposited with Blue Isle SVG and whether that is where money was stolen from. Plaintiff has not pled any facts supporting what happened to his funds. Based on the allegations in the Complaint, it is as likely that Plaintiff's funds were part of the $35 million Plaintiff alleges were embezzled or the $47.4 million that were neither allegedly embezzled nor deposited with Equiti UK, which only received a total of $42.6 million from Blue Isle SVG. *See* Exh. 1 ¶ 5. Without factual allegations that any of Plaintiff's funds actually went to Equiti UK, Plaintiff cannot satisfy the requirements for Article III standing.

### B.      The Complaint Does Not Properly Allege Diversity Jurisdiction

Plaintiff asserts subject matter jurisdiction solely under 28 U.S.C. § 1332(a)(3), diversity of citizenship. Compl. ¶ 1. "Diversity jurisdiction requires complete diversity; every plaintiff

must be diverse from every defendant." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Alleging residence is not sufficient to plead citizenship, a plaintiff must allege his or her domicile. *See Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1268 (11th Cir. 2013). Because Plaintiff does not allege his domicile he has not properly alleged diversity, and the Court lacks subject matter jurisdiction. *See id.*

## IV.   The Complaint Should be Dismissed for Failure to State a Claim

### A.   Relevant Pleading Standard

Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If a Complaint does no more than permit a court to infer "the mere possibility of misconduct," a motion to dismiss *must* be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[10]

Rule 9(b) requires parties alleging "fraud or mistake" to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) also applies to claims for aiding and abetting fraud. *See Gilbert & Caddy, P.A. v. JP Morgan Chase Bank, N.A.,* No. 15-CV-60653, 2015 WL 12862724, at *2–5 (S.D. Fla. Aug. 20, 2015). Because the Complaint repeatedly alleges that Defendants engaged in conduct that operated as or assisted a fraud or deceit (*e.g.,* Compl. ¶¶ 1, 30, 33, 37), Rule 9(b) applies.

Moreover, Rule 9(b) applies to all claims in the Complaint because when a complaint pleads the same facts to allege a non-fraud claim as to allege fraud, it sounds in fraud as to each claim. *Ctr. for Individual Rights v. Chevalina*, No. 16-cv-20905, 2018 U.S. Dist. LEXIS 28723,

---

[10] Put differently, Plaintiff must "present a story that holds together" (*Esys Latin Am., Inc. v. Intel Corp.*, No. 12-22265, 2012 WL 12865249, at *5 (S.D. Fla. Aug. 28, 2012)). Plaintiff's conclusory assertions that ordinary course business conduct was negligent or aided breach of fiduciary duty or fraud satisfy no applicable pleading standards.

at \*20 (S.D. Fla. Feb. 21, 2018) ("[C]ourts have consistently found that Rule 9 (b) is also applicable to torts that are not even necessarily fraudulent—such as a breach of fiduciary duty—as long as their underlying factual allegations include averments of fraud."); *Triton II, LLC v. Randazzo*, No. 18-cv-61469, 2018 WL 4932342, at \*5 (S.D. Fla. Oct. 10, 2018) ("Because negligent misrepresentation sounds in fraud, Rule 9(b)'s heightened pleading standard applies.").

### B. The Court Must Apply English Law, Which does not Recognize the Causes of Action Alleged

#### 1. English Law Applies to These Claims

This case has no substantive connection to Florida, and at most a minimal connection to any other U.S. jurisdiction.  Under Florida choice of law rules, English law should apply.  "A federal court sitting in diversity must apply the choice of law rules of the forum state in which it sits." *Razi v. Razavi*, No. 12-cv-80, 2012 WL 7801361, at \*4–5 (M.D. Fla. Dec. 21, 2012).  Florida choice-of-law principles thus apply here.  *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016) (citing Restatement (2nd) of Conflict of Laws § 145(2)).

"Under Florida law, courts must characterize the claims at issue—whether they are torts, contracts, etc.—and then look to the Second Restatement of Law on Conflict of Laws." *Mukamal v. Bakes*, 383 B.R. 798, 815 (S.D. Fla. 2007).  "Once it has characterized the legal issue, the court next determines the choice of law rule that the forum state applies to that particular type of issue."*Id.*

All claims asserted here are tort claims.  "Florida utilizes the 'most significant relationship' test ... to determine which state's laws applies to tort claims." *Court-Appointed Receiver of Lancer Mgmt. Grp. LLC v. Lauer*, No. 05-60584CIV, 2008 WL 906274, at \*4 (S.D. Fla. Mar. 31, 2008). Several factors inform which jurisdiction has the most significant relationship to a claim, including (1) where the injury occurred, (2) where the conduct causing the injury occurred, (3) the domicile,

15

residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered. *Michel*, 816 F.3d at 694; *see also In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d 1305, 1340 (S.D. Fla. 2010). The "most significant relationship" test applies to all three claims asserted in the Complaint.[11]

This standard requires the application of English law because each Restatement factor is either neutral or points to the UK as having the most significant connection to the dispute:

- **Where the injury occurred**. The injury asserted in this case occurred either in the Bahamas, where the Mediatrix funds were located, or potentially in Plaintiff's alleged location (Texas). Compl. ¶¶ 2, 7, 8. But because Plaintiff purports to bring this case as a class action, Plaintiff's alleged location is of lesser relevance in that purported class members are likely to be geographically dispersed. In a similar case, this court identified the location of the injury as where the losing investment funds were located. *In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d 1305 (S.D. Fla. 2010) ("the injury most likely occurred in the Bahamas where the Optimal funds were incorporated and where their value plummeted [as a result of a Ponzi-type scheme].") Because Bahamian law follows English law, this factor favors English law.

- **Where the conduct causing the injury occurred**. This factor strongly favors English law. The conduct that Equiti UK allegedly engaged in—"provid[ing] software, data, and reports to Mediatrix"—occurred in London, where Blue Isle SVG's trading with Equiti UK took place. Compl. ¶ 72. To the extent the court looks to the conduct of the entities that committed the alleged fraud (Mediatrix and Blue Isle), that conduct also occurred outside of the U.S.—in the Bahamas, where those entities were based. *Infra.* at p. 2.

- **The "domicile, residence, nationality, place of incorporation and place of business of the parties."** The parties reside in various jurisdictions, so this factor is neutral: Plaintiff alleges that he resides in Texas, and presumably other allegedly impacted investors are located in other jurisdictions; Equiti UK is located in the United Kingdom; and Equiti US is located in Florida.

- **The place where the relationship, if any, between the parties is centered**. Although Plaintiff and Defendants did not have any relationship, the alleged conduct that ties them together for purposes of this dispute is Blue Isle SVG's relationship with the Defendants. As discussed above, *infra* p. 11, the business model of Equiti UK did not include

---

[11] Under Florida law, claims for aiding and abetting breach of fiduciary duty are governed by the most significant relationship test. *See Aaron Data Sys., Inc. v. GLD Int'l*, Inc., No. 17-cv-62111, 2018 WL 1973653, at *8 (S.D. Fla. Mar. 23, 2018) (applying the most significant relationship test to hold that Australian law governed the plaintiff's aiding and abetting breach of fiduciary duty claim, even though the party that allegedly committed the breach was incorporated in Texas).

conducting business with U.S. customers.  Furthermore, the customer agreement between Equiti UK and Blue Isle SVG specifically selected English law (*id.* at n.3) and the contracts between Mediatrix and its customers expressly selected Bahamian and/or SVG law (both of which follow English law).  Thus no party expected US law to apply becaue each relationship relevant to Plaintiff's claims is governed by English law.

Because the UK is the jurisdiction with the most significant relationship to this dispute, English law should apply.

### 2.    The Claims Fail Under English Law

#### a.    Aiding and Abetting Common Law Fraud

Under English law, there is no cause of action for "aiding and abetting common law fraud" and the closest analog is an action for "unlawful means conspiracy."  For Plaintiff to succeed in an English law claim of unlawful means conspiracy, Plaintiff must establish each of the following elements:

- an agreement between two or more parties who take concerted action [*Kuwait Oil Tanker Co SAK v Al Bader (No 3)* [2000] EWCA Civ 160, paragraph 132] that causes damage to the target (i.e. Plaintiff) [*Lonrho v Fayed (No 5)* [1993] 1 WLR 1489, 1494];

- the conspirators must intend to cause injury to another person, whether or not that is their predominant purpose [*Lonrho plc v Fayed and others* [1992] 1 AC 448, 465-6]; and

- the conspirators use unlawful means to pursue their objective [*Total Network SL v Her Majesty's Revenue and Customs* [2008] UKHL 19, paragraph 44].

Plaintiff has not alleged facts supporting an agreement between either or both of the Defendants (on the one hand) and Mediatrix and its Affiliates (on the other hand) to cause damage to others. Further, Plaintiff has not alleged that the Defendants took concerted action with Mediatrix and its Affiliates pursuant to an agreement with them.  Under English law, such concerted action must be

more than mere facilitation [*CBS Songs Ltd v Amstrad Consumer Electronics plc* [1988] 2 All ER 484, 492]. This claim discloses no cause of action under English law and must be dismissed.

**b.     Knowing Assistance in Breaches of Fiduciary Duties**

Under English law, there is no cause of action of "knowing assistance in breaches of fiduciary duties;" mere knowledge is insufficient and Plaintiff must plead dishonesty on the part of the Defendants [*Royal Brunei Airlines Sdn Bh. v Tan* [1995] 2 AC 378, 392]. Because the claim of knowing assistance does not exist under English law and Plaintiff pleads no facts that could support an inference of dishonesty by Defendants, this claim must be dismissed.

**c.     Information Negligently Supplied for the Guidance of Others**

Under English law, there is no cause of action for "Information Negligently Supplied for the Guidance of Others," and the closest analog is an action for "negligent misstatement." For the reasons set out below and in this motion more generally, such a claim fails.

A negligent misstatement action may only be brought where a party owed a duty of care to another party and carelessly made a false statement to the other party, on which the other party relied and, as a result of which, the other party suffered loss. [*Caparo Industries v Dickman* [1990] 2 WLR 358, 368, 388, 405].

In order to establish a duty of care, English courts consider a three-part test:

- Foreseeability – Was it reasonably foreseeable that the conduct of the Defendants would cause loss to Plaintiff?

- Proximity – Was there a sufficient degree of proximity or a 'special relationship' between the parties?

- Fairness – Would it be fair, just and reasonable to impose a duty of care in such a situation?

Plaintiff must plead facts supporting each element to establish that Defendants owed a duty of care. But no factual allegations are made by Plaintiff in this regard. First, Defendants had no relationship with Plaintiff (or any other Mediatrix customers), and the conclusory allegations in

the Complaint do not establish that Defendants could not have foreseen that the provision of ordinary course trading and brokerage services would be used by Mediatrix and its Affiliates to perpetrate an alleged fraud.

But even if a duty of care was imposed upon Defendants, Plaintiff does not allege that *Defendants* made any statements (false or otherwise) to Plaintiff.  The mere use by Blue Isle SVG of off-the-shelf trading software, sublicensed from Equiti US and PANDA, does not make either Defendant liable for account statements prepared by Blue Isle SVG using that software (whether those statements were misleading or not).

### C.     The Claims Also Fail Under Florida Law

#### 1.     Plaintiff Fails to State Claim for Aiding and Abetting Fraud (Count I) or Breach of Fiduciary Duty (Count II) against both Defendants

Although Florida courts have not conclusively determined that a cause of action for aiding and abetting fraud exists, the courts presume that a plaintiff must allege (1) the existence of an underlying fraud; (2) defendant's knowledge of the fraud; and (3) that defendant provided substantial assistance to advance the commission of the fraud.  *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1097–98 (11th Cir. 2017); *Platinum Estates, Inc. v. TD Bank, N.A.*, No. 11-60670, 2012 U.S. Dist. LEXIS 30684, at *9, 2012 WL 760791, at *3 (S.D. Fla. March 7, 2012).

To state a claim for aiding and abetting a breach of fiduciary duty, a plaintiff "must allege (1) an underlying breach of fiduciary duty on the part of the primary wrongdoer, (2) knowledge of the underlying violation by the alleged aider and abettor, and (3) the aider and abettor's knowing rendition of substantial assistance in the commission of the wrongdoing."  *Lawrence v. Bank of Am., N.A.*, No. 09-cv-2162, 2010 WL 3467501, at *2–5 (M.D. Fla. Aug. 30, 2010), *aff'd*, 455 F. App'x 904 (11th Cir. 2012).  Plaintiff fails to satisfy the second and third elements of both claims.

#### 2.     Plaintiff's Allegations as to Knowledge are Conclusory

19

In order to survive a motion to dismiss an aiding and abetting claim, allegations of *specific facts* regarding a defendant's *actual knowledge* of the alleged underlying wrongdoing are required. *See Perlman v. Wells Fargo Bank*, N.A., 559 F. App'x 988, 993 (11th Cir. 2014) (when a claim of aiding and abetting is alleged against a bank, plaintiff must plead facts demonstrating "actual knowledge" of the wrongdoing; evidence that the bank should have known is not sufficient); *Lamm v. State St. Bank & Tr. Co.*, 889 F. Supp. 2d 1321, 1332 (S.D. Fla. 2012), *aff'd* sub nom., 749 F.3d 938 (11th Cir. 2014); *see also Gilbert & Caddy, P.A.*, 2015 WL 12862724, at *4 (plaintiff must allege specific facts that "give rise to a strong inference of actual knowledge regarding the underlying fraud.  Circumstantial evidence of actual knowledge will suffice but the circumstantial evidence must demonstrate that the aider and abettor actually knew of the underlying wrongs committed.  As with all pleadings, conclusory statements are insufficient to meet this burden.").

Institutions that conduct routine financial services are not required to investigate account holders' transactions.  *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1244-1245 (M.D. Fla. 2013)); *see also Moecker v. Bank of Am., N.A*., No. 813CV01095SCBEAJ, 2013 WL 12159056, at *7 (M.D. Fla. Oct. 21, 2013) ("Plaintiff's allegations must be sufficient to permit the Court to draw a plausible inference that [the defendant] had actual knowledge of ... [the] breach of fiduciary duty; allegations that suspicious activities" or "obviously fraudulent" transactions "should have spurred [the defendant] to action will not suffice.").

For example, in *Chang v. JPMorgan Chase Bank*, the plaintiff made sufficient allegations by asserting that an employee of the defendant bank wrote a false letter misrepresenting the account's balance, for which misrepresentation the employee received a large payment from the bank's customer, the alleged fraudster.  845 F.3d at 1092-93.  Similarly, in *Sun Life v. Imperial Premium*, the plaintiff insurance company alleged that defendant recruited senior citizens to apply

20

for life insurance policies with plaintiff whose policies defendant intended to thereafter purchase and use as an investment vehicle. *Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1210 (11th Cir. 2018). The complaint specifically alleged that defendant caused independent insurance agents to submit untruthful answers on the applications and secretly share their sales commissions with the defendant. *Id.* at 1205, 1210. In contrast, alleging atypical or odd transactions that may raise suspicion of a financial institution is not sufficient. *Perlman*, 559 F. App'x at 993–94.

Whereas *Chang* and *Sun-Life* illustrate the type of detailed and non-conclusory allegations required to adequately plead aiding and abetting claims, the Complaint falls far short of this standard. Plaintiff's *one* conclusory allegation that the Defendants had "knowledge" of wrongdoing by Mediatrix and its Affiliates is accompanied by *no* factual allegations about who supposedly knew what and how they supposedly obtained that knowledge. *See* Compl. ¶¶ 30, 33, 37 41, 46, 48, 59, and 66.

The Complaint does not allege that any services Defendants provided were anything other than common services provided in the normal course of business. Even irregular activity is insufficient to allege actual knowledge, *see Perlman*, 559 F. App'x at 993–94, and the Complaint only alleges *regular* activity. Although the common services of a prime broker may be less well known than those of a bank, the Complaint vaguely describes only typical services in the hopes the Court will interpret them as unusual. Of course, the Complaint does not go so far as to say as much, because it cannot, but Plaintiff's allegations are the equivalent of accusing a bank of providing a checking account and a safe deposit box to a customer. Plaintiff must allege something more that shows a conscious intent by each defendant separately to help a customer defraud Plaintiff. He does not.

As the court stated in *Lamm*, "[c]onclusory statements that a defendant 'actually knew' [are] insufficient to support an aiding and abetting claim where the facts in the Complaint only suggest that the defendant 'should have known that something was amiss.'"  889 F. Supp. 2d at 1332 (internal citation omitted);*see also Living Color Enterprises, Inc. v. New Era Aquaculture, Ltd.*, No. 14-cv-62216, 2015 WL 1526177, at *7 (S.D. Fla. Apr. 3, 2015) ("[T]he Complaint does not allege that [the defendant] had any duty to disclose [the] alleged breach, therefore, Plaintiff must allege facts that demonstrate a 'high conscious intent' and a 'conscious and specific motivation to aid the fraud.' Any such allegations are clearly lacking.").  Not only does Plaintiff fail to allege actual knowledge, he fails to allege that Defendants "should have known that something was amiss," and these claims thus fail.

### 3.    Plaintiffs' Allegations of Substantial Assistance are Insufficient

Substantial assistance "occurs when a defendant affirmatively assists, helps conceal[,] or fails to act when required to do so, thereby enabling the breach to occur."  *Chang*, 845 F.3d at 1098; *Belin v. Health Ins. Innovations, Inc.*, No. 19-61430, 2019 U.S. Dist. LEXIS 183600, *28 (S.D. Fla. Oct. 22, 2019) *report and recommendation adopted by* 2019 U.S. Dist. LEXIS 223133 at *1 (S.D. Fla. Dec. 30, 2019).  Moreover, "substantial assistance requires an affirmative step on the part of the aider-and-abettor that is a 'substantial factor' in causing the breach of duty." *Mukamal v. GE Capital Corp. (In re Palm Beach Fin. Partners, L.P.)*, 517 B.R. 310, 348, 2013 Bankr. LEXIS 5661, *78, 2013 WL 8923424 (Bankr. S.D. Fla. Aug. 23, 2013); *see also Chang*, 845 F.3d at 1092-93; *Sun Life Assurance Co. of Canada*, 904 F.3d at 1210.

The Complaint fails to satisfy this requirement in several respects.  *First*, as noted in the prior section, Plaintiff does not even attempt to allege scienter, let alone that either Defendant had a "conscious intent" to assist either Mediatrix or Blue Isle SVG with *their* allegedly fraudulent

scheme.  *Second*, Plaintiff does not allege facts showing that either Defendant affirmatively assisted or helped conceal anything.  *Cf. Chang*, 845 F.3d at 1092-93; *Sun Life Assurance Co. of Canada*, 904 F.3d at 1205, 1210.  All the Complaint alleges is that the Defendants (without delineating which) provided trading services and third-party software to Blue Isle SVG that was used by non-parties to mislead investors.  *See* Compl. ¶¶ 60 & 67.  The list set forth in paragraph 60 of the Complaint is merely a list of typical, ordinary-course services offered by financial brokers.  The Complaint does not allege that the Defendants provided any services or products to Blue Isle SVG that they do not provide to other customers (nor could Plaintiff make such allegations given the clear contracts and the SEC's explanation of the relationship between Blue Isle SVG and *all* of its brokers, *see* Exh. 2 ¶¶ 57-67).  Even if Mediatrix and its Affiliates used the services or software Blue Isle SVG received from the Defendants (and other brokers and PANDA) to facilitate an allegedly fraudulent scheme, that would be insufficient to state a claim against Defendants.  If it were otherwise, Microsoft could be sued for aiding and abetting every tort that made use of Excel or Word, which is not the law.

Providing Blue Isle SVG access to off-the-shelf third-party trading software and Blue Isle SVG's own account information is, without specific allegations of more, a typical broker-client relationship.  Indeed, nowhere in the Complaint does Plaintiff allege that Equiti UK or Equiti US operated the software at issue for Blue Isle SVG, designed or issued account statements to Mediatrix's customers, controlled the contents of those statements, or provided software to Blue Isle SVG with the knowledge or intention that Mediatrix and its Affiliates would use it to convey false information to Mediatrix's customers.  The absence of such allegations is fatal as a matter of law.  *SCIGRIP, Inc. v. Engineered Bonding Sols., LLC*, No. 615CV653ORL22KRS, 2016 WL 11567080, at *3–4 (M.D. Fla. Apr. 1, 2016) (dismissing aiding and abetting breach of fiduciary

duty claim because plaintiff failed to provide "a single allegation, beyond mere conclusion, that amounts to [the defendant's] conscious intent to assist [another] in breaching [a] fiduciary duty"); *see also Lawrence v. Bank of Am., N.A.,* No. 09-cv-2162, 2010 WL 3467501, at *2–5 (M.D. Fla. Aug. 30, 2010) (providing a "banking platform" or enabling another to conduct "basic banking services" does not constitute substantial assistance), *aff'd,* 455 F. App'x 904 (11th Cir. 2012); *Graham v. Cypress Capital Grp., Inc.,* No. 10-81269-CIV, 2011 WL 13227744, at *7 (S.D. Fla. July 12, 2011) (dismissing aiding and abetting claim because Complaint lacked "factual allegations as to how each Defendant 'affirmatively assist[ed], help[ed] conceal or fail[ed] to act when required to do so.'"); *Perlman* , 559 F. App'x at 993 ("Florida does not require banking institutions that conduct routine banking services to investigate transactions involving its demand deposit accounts; therefore, merely alleging that a bank should have known of a Ponzi scheme based solely on a series of purportedly atypical transactions is not sufficient to survive.").

### 4.    Plaintiff's Group Pleading Allegations Are Defective

The aiding and abetting claims against Defendants must also be dismissed because Plaintiff lumps the Defendants together and does not identify with sufficient particularity which Defendant supposedly did what.  This fails to satisfy Fed. R. Civ. P. 8(a).  *See Graham*, 2011 WL 13227744, at *6–7.

### D.    Count III Fails to State a Claim for Negligence

Count III of the Complaint alleges that Defendants negligently supplied information for the guidance of others, contrary to Restatement (Second) of Torts, Section 552, as allegedly adopted by Florida courts.  Section 552(1) provides:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to

exercise reasonable care or competence in obtaining or communicating the information.

The Eleventh Circuit has determined that "there is no substantial difference" between negligent misrepresentation under Florida common law and Section 552 negligent misrepresentation. *See Gilchrist Timber Co. v. ITT Rayonier, Inc*., 127 F.3d 1390, 1393-94 (11th Cir. 1997).   To state a claim for negligent misrepresentation, a plaintiff must plead with particularity that "1) the defendant made a misrepresentation of material fact; 2) the defendant either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; 3) the defendant intended to induce another to act on the misrepresentation; and 4) an injury resulted to the plaintiff who acted in justifiable reliance upon the misrepresentation." *Arnold v. McFall*, 839 F. Supp. 2d 1281, 1289 (S.D. Fla. 2011).  Plaintiff has not alleged sufficient facts to satisfy any of those the elements.

*First*, there is not a single allegation of *any representation*—let alone a misrepresentation of material fact—by either Defendant to Plaintiff or any putative class member.  Count III alleges that "the Equiti Defendants provided software, data, and reports to Mediatrix [defined as including Blue Isle], knowing that *Mediatrix was using them* to operate a Closed P&L System for the purpose of defrauding investors with misleading monthly statement and other reports."  Compl. ¶ 72 (emphasis added).  That is not an allegation of a misrepresentation by Defendants.  Also missing is an allegation that any information provided by either Defendant to "Mediatrix" was later passed on to Plaintiff, let alone that it was false or misleading.  Moreover, Plaintiff pleads no detail as to the basis for the Defendants' alleged "knowledge" about any communications by the Mediatrix parties with their customers.  Plaintiff alleges that deceptive "monthly statements and other reports" were "generated," but does not allege that either Defendant "generated" those documents or the allegedly false data they contained.  *See* Compl. ¶ 73.  Plaintiff's failure to allege a specific

misrepresentation by the Defendants requires dismissal of Count III.  *See Holguin v. Celebrity Cruises, Inc.,* No. 10-cv-20215, 2010 WL 1837808, at \*2 (S.D. Fla. May 4, 2010).

*Second*, Plaintiff alleges no facts to explain how the Defendants knew or should have known how Mediatrix was using Blue Isle SVG's account.  Nor does the Complaint contain any factual allegations that the Defendants knew or should have known of any misrepresentation Mediatrix made to Plaintiff.  This also requires dismissal.  *See Arnold*, 839 F. Supp. 2d at 1290 (S.D. Fla. 2011) (dismissing negligent misrepresentation claim because plaintiff "fail[ed] to provide any facts that support his theory that Defendant … acted with the requisite *mens rea* to commit … negligent misrepresentation").

*Third*, Plaintiff pleads no facts to suggest that either Defendant intended to induce him to invest in Mediatrix's products.  Indeed, the Complaint does not allege that either Defendant had anything to do with Plaintiff's decision to invest with Mediatrix.  *See Triton II, LLC v. Randazzo*, No. 18-CV-61469, 2018 WL 4932342, at \*5 (S.D. Fla. Oct. 10, 2018) (dismissing fraudulent representation and negligent misrepresentation claims because the plaintiff "allege[d] only in conclusory fashion that [the defendant] intended for his statements of material fact and omissions of material fact to induce Plaintiff to act by making the Investment"); *Roberts v. Victoria's Secret Stores, LLC*, No. 18-CV-61534, 2018 WL 4828448, at \*6 (S.D. Fla. Sept. 7, 2018), *report and recommendation adopted*, 2018 WL 6807395 (S.D. Fla. Oct. 3, 2018) ("As to the third element, the Plaintiff's Amended Complaint never alleges that Defendant actually intended to induce her or anyone else to act upon a misrepresentation or omission.").

*Fourth*, the Complaint lacks factual allegations necessary to show that the Defendants made any representations to Plaintiff before he invested with Mediatrix.  Without such allegations, Plaintiff has not alleged that he, let alone any putative class members, detrimentally relied on any

information from the Defendants, which requires dismissal.  *See Inman v. Am. Paramount Fin*., No. 10-CV-80393, 2010 WL 11561179, at \*6–7 (S.D. Fla. Aug. 18, 2010) (dismissing negligent misrepresentation claim pursuant to Rule 9(b) "because plaintiffs fail[ed] to plead factual allegations ... showing that [the defendant] made any representations to the plaintiffs prior to their transferring of the [funds] to the defendants' escrow account," which led to the plaintiffs' loss); *Roberts*, 2018 WL 4828448, at \*6 ("[A]s to the fourth element ... Plaintiff also does not allege that she justifiably relied on Defendant's misrepresentation, which is an essential component of this element of negligent misrepresentation.").

Finally, to the extent Plaintiff claims the Complaint should be interpreted as alleging that the Defendants negligently omitted information, this theory fails as a matter of law.  Under Florida law, "the failure to disclose material information is not actionable as part of a negligent misrepresentation claim absent some fiduciary or fiduciary-like duty to disclose the information." *Muy v. Int'l Bus. Machines Corp*., No. 19-cv-14, 2019 WL 8161749, at \*2–3 (N.D. Fla. Nov. 25, 2019).  Plaintiff cannot and does not allege any relationship (fiduciary or otherwise) with the Defendants, which requires dismissal.  *See id*.

**E.**      **Plaintiff's Class Action Claims in Counts I and III Must be Dismissed Because Reliance Cannot be Established Class-Wide**

Even if the Court concluded that Plaintiff had adequately pleaded Counts I and III as to himself, those claims would have to be dismissed as class claims because they cannot be resolved on a class-wide basis as a matter of law.  Class certification is not appropriate, for example, when issues such as the existence of liability to unnamed class members require resolution on an individualized basis. *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1234 (11th Cir. 2000); *see also A Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*, 938 F.3d 1170, 1172

(11th Cir. 2019) (considering whether the class, "proceeding on the Complaint as alleged, is viable").

Here, Counts I and Count III both require proof of individual reliance, as the Complaint itself acknowledges.  Compl. ¶ 44 ("*Based on* the omitted information regarding open losing trades, investors made or maintained their investments with Mediatrix"), ¶ 74 ("Plaintiff and the putative class members *justifiably relied* on the monthly statements and other reports ... to make or keep their investments with Mediatrix") (emphasis added).  Each putative class member would have to have received, reviewed, and understood the account statements and thereafter relied upon them to have a valid cause of action based on those statements, even if there were allegations in the Complaint that one or both of the Defendants knew they were being used to defraud anyone.

Importantly, even if each putative class member had reviewed the account statements, each class member would also have to have been misled in the same way Plaintiff claims he was misled—by assuming that the account statements reflected profit and loss for both closed and open positions, rather than just closed positions.  Indeed, because the Complaint alleges a scheme whereby investors were defrauded not by false account statements, but rather by technically accurate account statements that were "misleading," the Complaint cannot support a class action. Compl. ¶ 33 ("The Equiti Defendants knew that Mediatrix was using the Closed P&L System to provide misleading monthly statements to investors").

Courts have dismissed class claims like Counts I and III at the pleading stage because they require individualized proof that is not amenable to class treatment.  *See Bauer v. Dean Morris, L.L.P.*, No. 08-cv-5013, 2011 WL 3924963, at \*3–4 (E.D. La. Sept. 7, 2011) (dismissing class fraud claim); *Manzo v. Rite Aid Corp.*, No. CIV. A. 18451-NC, 2002 WL 31926606, at \*6 (Del. Ch. Dec. 19, 2002), *aff'd*, 825 A.2d 239 (Del. 2003) (same).  Because reliance (and whether or not

account statements "misled" an investor) for Counts I and III are individual questions, Counts I and III cannot be pursued as class claims and must be dismissed.[12]

## CONCLUSION

For all the foregoing reasons, the Complaint should be dismissed.

Date: June 12, 2020

Respectfully submitted,

*/s/ Andrew C. Lourie*
Andrew C. Lourie (Florida Bar No. 87772)
Daria Pustilnik (Florida Bar No. 92514)
KOBRE & KIM LLP
201 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
T:+1-202-664-1907
F: +1-305-967-6120
Andrew.Lourie@kobrekim.com
Daria.Pustilnik@kobrekim.com

Douglas Henkin (admitted *pro hac vice*)
Dentons US LLP
1221 6th Ave, New York, NY 10020
T: +1-212-768-6832
F: +1-212-768-6800
douglas.henkin@dentons.com

Stephen Senderowitz (admitted *pro hac vice*)
Dentons US LLP
233 S. Wacker Drive
Chicago, Illinois 60606
T: +1-312-876-8141
F: +1-312-876-7934
stephen.senderowitz@dentons.com

*Attorneys for Defendants Equiti US LLC and Equiti Capital UK Limited*

---

[12] Given the lack of factual allegations in the Complaint regarding Defendants and the strong likelihood that the Complaint will be dismissed in whole or in part, Plaintiffs should not be permitted to use their bare-bones Complaint as a wedge to try to use discovery to find claims to assert. *See McGaffin v. Centos Argos S.A.*, No. C4616-104, 2016 WL 6134542, at *3 (S.D. Ga. Oct. 10, 2016) (staying discovery on class fraud and negligence claims while motion to dismiss was pending).