# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
CASE NO.: 9:20-cv-80599-MIDDLEBROOKS/BRANNON

DAVID MOTES,                                )
                                            )
    Plaintiff,                              )
                                            )
v.                                          )
                                            )
EQUITI US LLC and                           )
EQUITI CAPITAL UK LIMITED,                  )
                                            )
    Defendants.                             )
                                            )
_____         )

## DECLARATION OF MICHAEL AYRES

Pursuant to 28 U.S.C. § 1746, MICHAEL AYRES declares:

1. I am the Chief Operating Officer of Equiti Capital UK Limited ("Equiti UK") and have held that position since September 2018. Equiti UK is located at 69 Wilson St, Finsbury, London EC2A 2BB, United Kingdom. The facts set forth in this declaration are based on my personal knowledge and/or my personal review of Equiti UK corporate documents.

2. Equiti UK is the managing member of Equiti US LLC ("Equiti US"). Equiti UK is a subsidiary of Equiti Group Ltd. Until November 2018 Equiti UK was known as Divisa UK Limited and until May 2018 Equiti US was known as Divisa US LLC.

3. Equiti UK is a prime broker, focusing on foreign currency, metals, and CFD (contract for differences) trading and is regulated by the UK's Financial Conduct Authority. Equiti UK does not accept U.S. persons, citizens, or corporations as customers, and it is part of Equiti UK's customer onboarding process to require confirmation from potential new customers that they are not U.S. persons, citizens, or corporations.

4. In connection with the preparation of this declaration, I have reviewed the complaint in *Motes v. Equiti US LLC and Equiti Capital UK Limited* No. 20-cv-80599-DMM (S.D. Fla.). I have also reviewed Equiti UK's customer agreements with Blue Isle Markets, Inc. ("Blue Isle SVG"). Blue Isle SVG presented itself to Equiti UK as being located in the Bahamas and incorporated in St. Vincent and the Grenadines.

5. Pursuant to its broker-client relationship with Blue Isle SVG, Equiti UK transacted currency and metals orders entered by Blue Isle SVG for its own account and provided real-time information to Blue Isle SVG about the positions resulting from those trades. Blue Isle deposited a total of $42.6 million US with Equiti UK while it was actively trading.

6. Plaintiff's Complaint references "software" numerous times. Compl. ¶¶ 26, 31, 32, 35, 39, 40, 41, 48, 49, 55, 67, 72. Equiti US sublicensed to Blue Isle SVG off-the-shelf trading software called MT4, which Equiti UK licensed from the maker of that software (Metaquotes Software Corp., which is located in Cyprus and other countries outside of the United States). *See* Exhibit 1.[1] Blue Isle SVG separately sub-licensed from another company (PANDA Trading Systems, which is located in Israel and Cyprus) a third-party plug-in record-keeping system for MT4 (MT4 MAM). Both MT4 and the MT4 MAM are widely used software packages that were not specifically designed for Blue Isle SVG.

7. I have searched the records of Equiti UK and based upon that review I have determined that Equiti UK did not have customer accounts with David Motes, Mediatrix Capital Inc., or Mediatrix Capital Fund, Ltd.

---

[1] I have reviewed the document attached hereto as Exhibit 1, which is the Memorandum of Understanding between Divisa US LLC and Blue Isle SVG that was filed in case number 1:19-cv-02594-RM-SKC pending in the United States District Court for the District of Colorado.

8. Equiti UK (a) is not licensed to do business in Florida; (b) does not carry out business in Florida (or in any other US state); (c) has no address, offices or employees in Florida; (d) does not advertise or market in Florida or directly at Florida residents (or residents of any other US state); (e) does not pay taxes in Florida (or any other US state); (f) is not regulated by any US regulator; and (g) does not maintain an agent for service of process in Florida.

9. I have reviewed the customer agreement between Equiti UK's predecessor (Divisa UK Limited) and Blue Isle SVG executed by Blue Isle SVG on June 12, 2017, and the applicable terms and conditions related thereto, which are attached to the motion to dismiss as Exhibit 3. That document is a true and correct copy of a record found in the files of Equiti UK, that record is maintained in the regular and ordinary course of business of Equiti UK, and it is the regular and ordinary course of business for Equiti UK to keep such records.

11. I have reviewed the document attached as Exhibit 4 to the motion to dismiss, which is Equiti UK's B2B (Business to Business) General Terms & Conditions (Effective from November 2018) (also available at https://www.equiticapital.co.uk/legal-documents/#terms-and-conditions). This document is a true and correct copy of a record found in the files of Equiti UK, that record is maintained in the regular and ordinary course of business of Equiti UK, and it is the regular and ordinary course of business for Equiti UK to keep such records. Every prospective Equiti UK client makes a representation, as a precondition of opening an Equiti UK account, that the prospective customer is not a US person.

12. I have reviewed the document attached as Exhibit 5 to the motion to dismiss, which is a list of Equiti Group's Regulators (also available at https://www.equiticapital.co.uk/media/9097/equiti-group-regulations.pdf). This document is a true and correct copy of a record found in the files of Equiti UK, that record is maintained in the regular and ordinary course of

business of Equiti UK, and it is the regular and ordinary course of business for Equiti UK to keep such records.

      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 12, 2020
London, United Kingdom

DocuSigned by:

*Michael Ayres*
0FDB32FE95894E1...

Michael Ayres

# EXHIBIT 1
# AYRES DECLARATION



### Memorandum of Understanding
Between

**Divisa US LLC**  
140 Intracoastal Pointe Dr, Suite 401  
Jupiter, FL 33477  
USA

**Blue Isle**  
Suite 305, Griffith Corporate Center  
P.O. Box 1510, Beachmont  
Kingstown  
St. Vincent and the Grenadines

(Hereinafter the **"Technology Provider"**)    (Hereinafter the **"Client"**)

### 1. Disclaimer
The purpose of this memorandum is to understand and define the intentions, commitments, and obligations of the parties herein.

**WHEREAS** the Technology Provider will provide Products and Services outlined in ADDENDUM A (the Services) to the Client; and
**WHEREAS** the Technology Provider has agreed to supply the said Products and Services, all on the general terms set out herein.

### 2. Description of the Services
The Technology Provider will provide Technology Services which include Software, Connectivity, and Customer Support to the Client.

**Software**
- MT4 Private Label
- MT4 Manager
- MT4 Bridge
- MT4 MAM
- MT4 WL Admin Tool

**Connectivity**
- Divisa Capital LP's liquidity (The Liquidity Provider)

**Customer Support**
- New Features/Updates
- 24/6 Technical Support
- Trade Forensics
- Setup Consulting

### 3. Obligations of the Technology Provider
a. The Technology Provider agrees to deliver/setup the MT4 Private Label Service for the Client within 14 business days after the completed Private Label forms/graphics and the setup fees defined below is received by the Technology Provider if applicable.
b. The Technology Provider agrees that all customer information from the Clientis private and confidential -- unauthorized access to customer information is strictly prohibited.
c. The Technology Provider agrees that it will provide 1 Live and 1 Demo MT4 server environment for the Client if applicable.



  d. The Technology Provider agrees that it will provide 4 Live and 4 Demo MT4 managers for the Client if applicable.
  e. The Technology Provider agrees that it will provide a basic Private Label with a Multibank Data Feed including the Technology Providers default non-customized symbol list, which includes 65 currency pairs, plus spot gold and silver for the Client if applicable.
  f. The Technology Provider agrees that it will provide a total of 6 segregated MT4 groups for the Client if applicable.
  g. The Technology Provider agrees that it will host the servers required for the use of the MT4 software for the Client if applicable.
  h. The Technology Provider agrees that it will fix software bugs and respond to the Client's requests in a timely and professional manner.

4. **Obligations of the Client**
  a. The Client agrees to pay software leasing fees in accordance with the Fee Schedule which is outlined in ADDENDUM B (The Fee Schedule).
  b. The Client agrees to follow the guidelines provided by the Technology Provider on proper use of the Software MetaTrader 4, Plugins, and/or any other software that connects to, or affects the Software.
  c. The Client agrees that the reports/statements provided by the Technology Provider are to be considered valid, unless otherwise proved to be inaccurate (outlined in line item 5. Billable Investigations).
  d. The Client agrees that they will be the first line of support to their end clients, and that they will not direct, or allow their end clients to contact the Technology Provider, in less the Technology Provider agrees.

5. **Billable Investigations**
When resolving a perceived Error involves investigatory efforts by the Technology Provider, the Technology Provider reserves the right to charge $200 per hour for investigating such perceived errors that are found to be non-Errors, or if Error is found to be caused from the Client not following software guidelines.

6. **Confidentiality**
Both Parties agree that they shall keep confidential the provisions and subject matter of this Memorandum and any negotiations relating to furthering the relationship between the parties. The Client understands and agrees not to market, or disclose any information about the Technology Provider with Third Parties without prior written notice signed by both parties.

This does not apply to information which:
  a. is required to be disclosed by operation of law or any stock exchange regulations or any binding judgment or order, or any requirement of a competent authority;
  b. is reasonably required to be disclosed in confidence to a party's professional advisers for use in connection with the relationship between the Parties and/or matters contemplated in this Memorandum; or becomes within the public domain (otherwise than through the recipient party's default).

7. **Initial Term and Termination**
This contract and the services rendered hereunder are valid for one year and will automatically renew annually after the signing of this Memorandum AND the first trade is processed. Except as provided herein, either party may terminate this Memorandum with prior written notification. The notice period for such prior written notification will be 60 days.

8. **Other Restrictions**
The Client may not rent or lease the Service or Software for services bureau purposes. The Client may not reverse engineer, decompile or otherwise derive source code from the Software (except to the extent specifically permitted by the law without the possibility of contractual waiver). The relationship between the parties created by this Memorandum is that of independent contractors and not partners, joint ventures or agents. Under no



circumstances shall any affiliate or client of the Client or any other person be considered a third party of this Memorandum or otherwise entitled to any rights or remedies under this Memorandum (including any right to be considered in connection with any variation or rescission of this Memorandum discussed and/or agreed between the Technology Provider and the Client), even if such persons are provided access to the software or service or data maintained in the Software.

## 9. Liability Exclusions

Under no circumstances shall the Technology Provider or any affiliate providing software or services under this Memorandum be liable to the Client or to any other person for losses or damages which fall into each of the following categories: (a) trading losses, inaccurate distributions, inaccurate swaps, lost revenues, lost profits or loss of business, (b) loss of or damage to goodwill, or loss of anticipated savings; (c) loss of or corruption to data, (d) any incidental, indirect, exemplary, consequential or special damages of any kind including (in each case) such losses or damages arising from any breach of this Memorandum or any termination of this Memorandum, and (in each case) whether such liability is asserted on the basis of contract, negligence, other tort, or otherwise, unless caused by gross negligence, willful misconduct or fraud of the Technology Provider.

## 10. Announcements

Both Parties agree that no public announcement or press release in connection with the subject matter of this Memorandum or any further transaction shall be made or issued by or on behalf of either party without the prior written approval of the other party (such approval not to be unreasonably withheld or delayed). This does not apply if the announcement or press release is required by law or by any governmental authority, although in such circumstances the relevant party shall give the other party every reasonable opportunity to comment on any announcement or release before it is made or issued (provided that this shall not have the effect of preventing the party making the announcement or release from complying with its legal obligations).



## ADDENDUM A – THE SERVICES

The Client may choose and confirm the desired services below by checking the box.

### THE TECHNOLOGY PROVIDER SERVICES

[ ] **Currenex Private Label Solution**

[X] **MT4 Private Label Solution**

[X] **MT4 WL Admin Tool**

[X] **MT4 Server Hosting**

[X] **MT4 Server Monitoring Service**

[X] **MT4 MAM (3rd party agreement)**

[X] **MT4 Bridge**

[X] **MT4 Bridge Support/Processing**

[X] **Multibank Data Feed**

[X] **Dealing Desk Trade Processing**

[X] **MT4 mobiles**



## ADDENDUM B – THE FEE SCHEDULE

| Description | Basis | Fee |
|---|---|---|
| MT4 Dedicated Server | One Time | n/a |
| MT4 Private Label | One Time | $5,000 |
| MT4 Support/Maintenance | Per Month | $1,500 |
| MT4 Server Hosting* | Per Month | Included |
| Physical Server Setup/Configuration* | One Time | Waived |
| STP Volume Fees** | Per Million | To be reviewed for reduction on volume after 1 Yrd vol pr month  $15 |
| MT4 Bridge Setup | One Time | Waived |
| MT4 Bridge Support/Processing | Per Month | Waived |
| Multibank Data Feed | Per Month | Included |
| MT4 Server Monitoring Service | Per Month | Included |
| MT4 MAM Plugin Setup/Support* | Per Month | n/a |
| MT4 Mobile Traders | Per Month | $750 |
| Each additional MT4 Manager after 4 | Per Month | $50 |
| Each additional MT4 Group after 6 | Per Month | $50 |

**Minimum Monthly Fees**: The basic minimum monthly fee is $1,500. The minimum monthly fees are based on the maximum resource fee introduced by one of the following.  (Example: MT4 DD volumes **VS** MT4 Custom Symbol List)  This means, if your MT4 DD volume based fees exceed the MT4 Custom Symbol List and MT4 Bridge fees for that month, you only pay the MT4 DD volume based fees for that month.

***STP Volume Fees:** The Liquidity Provider will receive $15 per each USD million traded.  Commission schedule will be reviewed after 90 days for potential improvements based on volume tiers.

***MT4 MAM Plugin Setup/Support:** The Client will need to sign agreement with 3rd part provider of MAM, and pay fees directly to them.

**Payment Terms**: All Product/Maintenance Fees shall be paid in advance, by the 1st day of each calendar month for following month. To establish a Private Label the Maintenance Fee for that month must be paid in advance (regardless of the date). Minimum Total Monthly Processing Fees will be paid by the 1st of each month for the preceding month. **\*\*note\*\*** If client does not pay invoice by the 9th, the technology provider reserves the right to cancel the client's MT4 private label immediately.

Signature page to follow



**Divisa US LLC**

By _____
        James Mason
Name
        Managing Director
Title
_____
Date

**Blue Isle**

By _/s/ Michael Stewart_
    Michael Stewart
Name
    General Mnager / Beneficary Owner
Title
    02/19/2016
Date